HERBERT POWELL

*v.*

JASON L. McDOWELL *et al.*

*Opinion filed February 21, 1902.*

WILLS—*language of will construed.* Under a will giving a life estate to the widow, and providing that should she again marry the premises shall be sold and the proceeds thereof "be equally divided among my heirs, except James B. Armstrong, James B. Chesney and Louisa Matthews. Memorandum:—I hereby include Mary Ann VanWormer as entitled, in any contingency, to share equally of my estate with my other legal heirs not herein excepted,"·the children named under the exception are excluded from.participation as remainder-men, even though the widow does not re-marry.

APPEAL from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

GEORGE B. MARVEL, for appellant.

H. H. McDOWELL, for appellees.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This litigation originated in the circuit court of Livingston county on a bill for partition by the appellant, against appellees. The bill alleges that the appellant, complainant below, is the owner of the undivided five-sixths (or ten-twelfths) of the south-west quarter of section 30, township 27, north, range 6, east of the third principal meridian, in said Livingston county, and that the defendants Jason L. McDowell and Samuel Dancey are the owners each of an undivided one-twelfth thereof,

Miller Hotaling merely occupying the premises as a tenant. The answer of the defendants McDowell and Dancey denies most of the allegations of the bill, but in effect admits the tenancy in common, and avers that said lands should be divided into eight shares instead of twelve, and that they, the defendants, are each entitled to a one-eighth interest therein instead of one-twelfth, and that the complainant is entitled to six-eighths instead of five-sixths, as alleged in the bill. The real controversy, therefore, between the parties is as to the several interests of the parties as tenants in common, and this issue arises upon the construction of the last will and testament of one George Armstrong, from whose heirs and devisees the respective parties deraign their title.

By the first item of that will the testator gave to his wife, Ann M., a life estate in the lands in question if she remained unmarried, subject to a mortgage lien of about $240. By the second item he gave her all his personal property, subject to the payment of the bequests afterward made and of his debts. By the third he gave to each of his children and step-children (hereafter named) one dollar each, payable only after his just debts were settled. The next clause is called a "memorandum," and provides that the wife shall have the control, etc., of five of the children of the testator. The fourth and last item is as follows: "I hereby constitute my said wife, Ann M. Armstrong, sole executrix of this my last will and testament, without being required by court or officer of a court to give bondsmen for the performance of her duties. Should she again marry, it is my will and desire that the premises herein devised shall, according to law, be sold and the proceeds thereof be equally divided among my heirs, except to James B. Armstrong, James B. Chesney and Louisa Matthews. Memorandum:—I hereby include Mary Ann VanWormer as entitled, in any contingency, to share equally of my estate with my other legal heirs not herein excepted."

It appears from the evidence that George Armstrong, the testator, was three times married. By the first marriage he was the father of two children, James B. and Elizabeth Armstrong, the latter being dead at the time of the execution of his will, leaving her surviving a son, James B. Chesney. By the second marriage he was the father of five children, Mary, Isabelle, Louisa, Rebecca and George, the said Louisa being, at the time of the execution of his will, the wife of one Matthews. And by the last marriage he was the father of four children, Melville C., Elizabeth J., Martha J. and Elmer Y. Armstrong. His last wife, Ann M., had been previously married and had three living children of that marriage,—two sons and one daughter, the said Mary Ann VanWormer, mentioned in the last item of the will. The construction insisted upon by the appellant of this item 4 is, that the eleven children of the testator, together with the said step-daughter, Mary Ann VanWormer, are each entitled to one-twelfth of the estate, he having obtained conveyances from nine of those children and said step-daughter, Mary Ann VanWormer. The deeds of conveyance from these parties, as well as those by other children to McDowell and Dancey, purport to convey only the undivided interests of the grantors in said lands. The contention of defendants, on the other hand, is, that by said item 4 the three parties, James B. Armstrong, James B. Chesney and Louisa Matthews, are excluded from participating in the estate, and that with the other children and heirs-at-law of the testator Mary Ann VanWormer is to be included, thus dividing the estate into nine shares,— and this construction was adopted by the circuit court in its decree.

There is no substantial difference between counsel for the respective parties as to the rules of construction applicable to the interpretation of wills. In the language of Chief Justice Marshall: "The intent of the testator is the cardinal rule in the construction of wills, and if that

intent can be clearly conceived and is not contrary to some positive rule of law it must prevail." (*Finlay* v. *King,* 3 Pet. 346; *Whitcomb* v. *Rodman,* 156 Ill. 116; *Player* v. *Kennedy,* 169 id. 360, and many other decisions of this court.) The intention must, however, in all cases, be gathered from the language used by the testator, the question being, not what the testator should have meant to do or what language he meant to use, but what did he intend by the words which he did actually adopt. In our opinion the controversy between these parties must be determined by applying these rules to the last clause of the fourth item, which is there designated "memorandum." The widow, Ann M., never married after the death of the testator, and hence the preceding part of that item is unimportant, except as it aids in the construction of the last clause. We think the last two sentences of the fourth item should be read together, as follows: "Should she again marry, it is my will and desire that the premises herein devised shall, according to law, be sold and the proceeds thereof be equally divided among my heirs, except James B. Armstrong, James B. Chesney and Louisa Matthews. I hereby include Mary Ann VanWormer as entitled, in any contingency, to share equally of my estate with my other legal heirs not herein excepted,"—the word "memorandum," preceding the last sentence, having no meaning whatever. So read, we think the language employed clearly expressed the intention of the testator that in case the widow did not re-marry, the remainder, after her life estate, should go to his step-daughter, Mary Ann VanWormer, and his legal heirs, except James B. Armstrong, James B. Chesney and Louisa Matthews. There certainly can be no doubt as to his intention to give the step-daughter an interest in his estate, and this is conceded by counsel for both parties. The bequest to her is coupled with his legal heirs, except the son and daughter, James B. Armstrong and Louisa Matthews, and the grandson, James B. Chesney.

By this construction no part of the testator's estate was intestate property, and the rule insisted upon by counsel for the appellant, announced in *Lawrence* v. *Smith*, 163 Ill. 149, *Minkler* v. *Simons*, 172 id. 323, *Parsons* v. *Millar*, 189 id. 107, and *Ames* v. *Holmes*, 190 id. 561, has no application. "It is undoubtedly true that a testator can not disinherit his heirs unless he leaves his property to others. Mere words of exclusion will not suffice. The estate must be actually given to somebody else." The gift need not, however, be in express terms, but may be by necessary implication. It has been often held by this and other courts that a testator may will his entire estate to strangers, to the exclusion of his heirs and next of kin. We do not deem it necessary to consider in this connection the rules applicable to gifts by implication. Where, however, the intention of the testator to dispose of his property by will to certain beneficiaries is clearly ascertainable from the instrument, courts will always enforce such provisions though the gift is not made in formal language. It is true of this as it is of many other wills, that the intention of the testator is somewhat obscurely expressed, but we are unable to see by what interpretation effect can be given to all the language used in the fourth item, except in the manner indicated. We are therefore of the opinion that the chancellor properly determined the respective rights and interests of the grantors in the deeds to complainant and defendants.

While some question is raised as to the correctness of the accounting between the parties for rents, it is only upon the contention of appellant that the respective interests of the parties was improperly determined, there being no claim that on the basis of the decree below the rents were not properly adjusted.

The decree of the court below will therefore in all respects be affirmed.                    *Decree affirmed.*