NELLIE M. OLCOTT *et al.*

*v.*

JOHN W. TOPE, Exr. *et al.*

*Opinion filed December 22, 1904.*

1. WILLS—*testator's intent must prevail though gift is not made in formal words.* The intent of the testator, if it can be clearly conceived and is not contrary to some positive rule of law, must prevail although the gift is not made in formal language.

2. SAME—*gift need not be express in order to disinherit heirs.* While mere words excluding the heirs-at-law will not suffice to disinherit them unless the estate is actually given to other persons, yet the gift need not be made in express terms but may be by necessary implication.

3. SAME—*court may look to the state of the property devised.* In construing a will the court may look to the state of the property devised in order to ascertain the intention of the testator from the language used.

4. SAME—*court may supply words obviously omitted.* In construing a will the court may supply an obvious verbal omission in order to effectuate the intention of the testator as gathered from the context of the will.

5. SAME—*when court may substitute "and" for "or."* In construing a will the court may substitute the word "and" for the word "or," where without such substitution the plain purpose of the testator as disclosed by the entire will would be defeated.

6. SAME—*estate of trustee is commensurate with his powers.*
The estate of a trustee of real estate under a will is commensurate with the powers conferred upon him and the purpose to be effected by the trust; and if he is authorized to lease the property or sell the same, in his discretion, he is vested with the fee in trust.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

The following is the statement of facts in this case made by the Appellate Court:

·"This is a bill filed by appellee, praying for a construction of the will of Anna B. Moore, deceased, and asking the direction of the court.

"Letters were issued to appellee as executor named in the instrument, and he proceeded to administer the estate. September 29, 1902, he was discharged as executor. The bill states that it became necessary to sell the real estate to pay debts; that this was done under the direction of the probate court and the debts were paid; that there was left in the hands of appellee, as executor, a balance of $4924.76 belonging to the estate, which, it is claimed, by the terms of the will appellee should hold and manage for the purposes therein stated; that appellee is advised and believes that in accordance with the provisions of the will he should invest the money in his hands for the benefit of Charles Leslie Spikings, the amount, with its accumulation, to be paid to him when he shall reach the age of twenty-one years; that in the event of the death of said Spikings before arriving at that age the accumulated fund shall be paid to Mary Spikings, mother of Charles Leslie Spikings; that in the event of her death before the death of Charles Leslie Spikings, and of his death before reaching the age of twenty-one years, the fund shall be distributed to the next of kin and heirs-at-law of said Anna B. Moore, deceased; that it is the right and duty of appellee to invest the funds so remaining in his

hands, and the income therefrom, and to re-invest the same in such manner as will, in his judgment, be safe and promote the interests of the estate. Answers were filed by the surviving heirs and next of kin, who are nephews and nieces of Anna B. Moore, deceased, claiming that by the terms of the will any moneys remaining in appellee's hands arising from the sale of the real estate should be distributed to the legal heirs of the deceased according to the laws of descent.

"The decree appealed from finds, *inter alia,* that Mary Spikings and Charles Spikings are sole beneficiaries under the will, and that the true intent and meaning of its provisions are in accordance with the views of the executor as set out in the bill. The will is as follows:

" 'This memorandum I wish as my last will and testament being written and witnessed by my request. I desire Dr. J. W. Tope to act as my executor. I wish my executor to collect the rents of my farm in Leyden Tp., Cook Co., Ills., and any other indebtedness due me and pay all just debts that may be owing at my decease at the expiration of the term for which my farm is leased, I desire my executor to either lease the same again, or sell it whichever in his judgment is to the best interest of my estate, after the payment of all my debts, I desire my executor to invest the surplus rent, or in the case of the sale of the property heretofore mentioned, or any moneys derived from any source which may be owing at my decease, for the benefit of Charles Leslie Spikings, son of Charles and Mary Spikings of Chicago, Cook Co., Illinois, and to be paid to him when he shall have arrived at the age of twenty-one years.

" 'In case the said Charles Leslie Spikings should die before arriving at the age of twenty-one years, I desire that whatever money or property of any kind which would belong to him under the will, to go to his mother Mary Spikings, and in case of her decease prior to the decease of her son Chas. Leslie Spikings, I desire the property to be distributed to my legal heirs according to the laws of Illinois.

" 'Signed by me as my last will and testament this 28th day of January, 1899.

ANNA X B. MOORE.
her        mark

" 'Witnessed at her request and signed and sealed in the presence of each other this 28th day of January, 1899.

H. S. HUBBELL,

[L. S.]                    118 43d St., Chicago, Ill.

MRS. M. J. BUNNELL.'

" 'STATE OF ILLINOIS, ⎱
    *County of Cook.* ⎰ *ss.*

" 'Personally appeared before me, a notary public in and for said county, Anna B. Moore, and acknowledges the above will to be her free and voluntary act.

" 'Given under my hand and notarial seal this 29th day of January, 1899.                    HENRY S. HUBBELL,
[SEAL.]                                   *Notary Public.'*

"Anna B. Moore died the day following the execution of the above instrument, which, it appears from the bill, was contested and found to be her last will and testament."

FREDERICK MAINS, and BOWLES & BOWLES, (THOMAS E. D. BRADLEY, of counsel,) for appellants.

JESSE A. & HENRY R. BALDWIN, and JULIUS A. JOHNSON, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The following opinion, delivered by a majority of the Branch Appellate Court, speaking through Mr. Justice FREEMAN, correctly disposes of the questions involved in this case, and is adopted as the opinion of this court:

"It is contended in behalf of the heirs-at-law of Anna B. Moore, deceased, that no intention is expressed by the language of the will to devise the fee of the land, or to dispose of the principal sum derived therefrom; that having a farm, which was leased, and assuming the income therefrom would be more than sufficient to pay her debts, the testatrix intended to leave to Charles Leslie Spikings, only the *surplus* of said rent that might be due at the time of her death, together with any other moneys then due her estate, as a modest bequest in indication of her affection for him; that the executor has a mere power of sale, and that the proceeds must be distributed among the heirs-at-law, since, as is claimed, the fee was vested in them upon the death of the testatrix.

"We are unable to agree with these contentions. It is true that 'heirs-at-law are not to be disinherited by conjecture, but only by expressed words or necessary implications,' (29 Am. & Eng. Ency. of Law,—1st ed.—p. 352,) and that a court of equity will not undertake to rectify a mistake in a will. (*Engelthaler* v. *Engelthaler,* 196 Ill. 230-235). But where, from the language used in the will itself, the intent of the testator can be clearly conceived and is not contrary to some positive rule of law, it must prevail, though the gift is not made in formal language. (*Powell* v. *McDowell,* 194 Ill. 394-397, and cases there cited).

"In the present case, there is no serious difficulty in discovering the intention of the testatrix, as expressed by the language of the will, taking into consideration all its parts. The contention of appellants is based upon the absence of words explicitly devising the real estate or its proceeds. There is no want of clearness until we come to the following: 'After the payment of all my just debts, I desire my executor to invest the surplus rent, or in case of the sale of the property heretofore mentioned, or any moneys derived from any source which may be owing at my decease for the benefit of Charles Leslie Spikings, son of Charles and Mary Spikings, of Chicago, Cook county, Illinois, and to be paid to him when he shall arrive at the age of twenty-one years.' The ambiguity in this is due, in part, to an equivocal or superfluous use of the word 'or,' and to the omission of other words implied, but not expressed, but which may be with propriety 'supplied by the court in order to effectuate the intention of the testator as gathered from the context of the will.' (2 Jarman on Wills, chap. 16, p. 486, 60; 29 Am. & Eng. Ency. of Law, 372; *Glover* v. *Condell,* 163 Ill. 566; *Blinn* v. *Gillett,* 208 id. 473; *Lash* v. *Lash,* 209 id. 595-604). In the last mentioned case the will provided that the executor should 'have one year after my decease to sell the land.' The court finds that the intention, collected from the context of the will, was that the wife should have the use

and benefit of the land during her natural life, and that at her death the land should be sold and the proceeds applied by the executor, as directed in the will. It is held that what the testator intended to express by that portion of his will was, that the executor should 'have one year after my (wife's) decease to sell the land;' that the word 'wife's' was omitted in drafting, and that the ambiguity or apparent inconsistency on the face of the will is ascribable to that omission, which may be supplied to effectuate the intention of the testator.

"In the case before us, the testatrix provided for the collection of the rents of her farm and any other sums due her and their application in payment of her own debts. Then she authorizes her executor either to let the farm again after the expiration of the then existing lease, or to sell it, whichever would be, in his judgment, for the best interest of the estate, thus indicating a purpose that the executor should control the farm and its proceeds after her death. Then follows the language above quoted, over the meaning of which this controversy arises. What the testatrix honestly intended to express, reading this part of her will in connection with the whole instrument, is, in substance, that the executor shall invest the surplus rent, (and a surplus might be expected if he should re-let the farm for a term of years,) or in case of the sale of the farm that he shall invest any moneys derived from such sale, or from any source, including money owing to her at the time of her decease, for the benefit of Charles Leslie Spikings, the sum, with its accumulation, to be paid to him if he lives to attain the age of twenty-one years.

"With slight changes of the reading in words, reading 'or' as 'and' where it evidently has that meaning, and supplying a verbal omission in order to effectuate the intentions of the testatrix as gathered from the context of the will, (*Lash* v. *Lash, supra,*) the provision in controversy will read as follows: 'After the payment of all my just debts, I desire my executor to invest the surplus rent, or, in case of the sale

of the property heretofore mentioned, *the proceeds, and* (or) any moneys derived, from any source, which may be owing at my decease, for the benefit of Charles Leslie Spikings.' We are of opinion that the italicized words we have supplied are implied from the connection and context and from the will as a whole. The word 'or,' which we read as meaning 'and,' is conceded by counsel for some of the appellants to have that meaning in this connection, and in behalf of other appellants it is claimed that it should be discarded altogether, as having no meaning. In *Boyles* v. *McMurphy,* 55 Ill. 236-238-239, the word 'or,' as used in the eleventh section of the Dower act, 'shall thereupon be entitled to dower in the lands *or* share in the personal estate of her husband,' is construed in connection with the preceding sections as meaning 'and.' In *Ebey* v. *Adams,* 135 Ill. 80, is a discussion of the effect of the word 'or' in a will between the name of devisees and the words, 'their heirs.' In Bouvier's Law Dictionary (title 'or') it is said: 'Or' is often construed 'and,' and 'and' construed 'or' to further the intent of the parties in legacies, devises, deeds, bonds and writings,'— citing authorities.

"A will should be so construed as to give effect to every part of it without change or rejection, provided an effect can be given not inconsistent with the general intent as gathered from the entire will. (See 29 Am. & Eng. Ency. of Law,—1st ed.—p. 350). The words 'or in case of the sale of the property heretofore mentioned,' as they stand in the will, suggest a purpose and intent of the testatrix not fully stated,—a verbal omission which is implied. (*Young* v. *Harkleroad,* 166 Ill. 318-325). To give effect to these words requires their construction in connection with the rest of the instrument. They distinctly refer back to the power of sale given to the executor in the words which precede them. The 'property heretofore mentioned' is the farm, which the executor had just been authorized and directed to either lease or sell; if leased, the executor is authorized and

directed to invest the surplus rent. If sold, the testatrix evidently intends, as the context indicates, to provide for the investment and disposition of the proceeds in the same way, together with any money derived from any other source, otherwise the reference to 'the sale of the property heretofore mentioned,' in that connection, would have no meaning. Having provided for the disposition of the surplus rents in the case of re-letting, the disposition of the proceeds in case of the other alternative, a sale, was the next proper, orderly and logical thing to be provided for in that connection. This provision she evidently intended to make and supposed she had made, and though she failed to employ apt language, we are of opinion the intention is sufficiently manifest in the language used that both surplus rents and proceeds of 'sale of property heretofore mentioned' are alike to be invested for Charles Leslie Spikings, and to be paid to him when he becomes of age. This conclusion is justified, if it needs justification, by phraseology employed in the concluding paragraph of the will. As we have said, and it is perfectly apparent from the context, the testatrix refers to the farm in the words, 'in case of the sale of the property heretofore mentioned,' using the word 'property' to designate the only real estate mentioned in the will. In the concluding paragraph of her will she uses the same word evidently in the same sense, where she says, 'I desire that whatever money or property of any kind which may belong to him (Spikings) under the will, to go,' etc., thus distinguishing between the 'money,' which would so belong to him and the 'property,' or farm, which she evidently expects and intends should belong to him also. The rents and other indebtedness are specifically given to Spikings in language not questionable, and are properly referred to as 'money' in distinction to the farm, which is spoken of as 'property.' But, except in the controverted part of the will above considered, there is no specific bequest to Spikings of any property except the 'money' to be collected from rents and

debts due her. Yet the testatrix speaks not only of 'money,' but of 'property' also, as what 'would belong to him under the will,' unless he 'should die before arriving at the age of twenty-one years,' thus indicating clearly that such was her intention, and also, as we think, tending to show that she supposed the language before employed expressed such intention. 'The inquiry always is what did the testator intend, and the answer is to be sought for and found in the intentions of the will, taking into consideration all its parts, and giving to the language the sense in which it was used by the testator. For this purpose the court will look to every provision of the will, the better to understand the plan of distribution adopted and the purpose of the testator in making the particular provisions under consideration.' (*Ebey* v. *Adams,* 135 Ill. 80-86).

"The intent of the testatrix in the case before us is further evidenced by the later language of the will, where it is provided that the 'property,' using the same word before applied to the farm in distinction from the money referred to in the will, shall be distributed to her legal heirs according to law only in case of the contingency therein stated. While mere words excluding the heirs-at-law will not suffice to disinherit unless the estate is actually given to someone else, such gift need not be in express terms, 'but may be by necessary implication,' (*Powell* v. *McDowell,* 194 Ill. 394,) and the words of exclusion or of contingent inclusion may alike serve to indicate the intention of the testatrix and aid in the interpretation of her will. The instrument, as a whole, shows beyond cavil an intention to provide for the legatee, Spikings, and that the property, real and personal, should revert to the heirs only in the event of his death, and that of his mother. The decree finds that it became necessary to sell the real estate to pay debts, the personal property not sufficing. The testatrix, apparently anticipating such a contingency, gave the executor power to rent or sell for the benefit of her estate, which she follows with a statement that 'after the

payment of all my just debts, I desire my executor to invest the surplus rents or in case of the sale,' etc. As the sale of the realty was necessary to pay her debts, it is apparent that, unless he is entitled to the proceeds of the farm, Spikings will get nothing under the will. The rule is well recognized that, in the construction of a will, the court will look at the state of the property devised in endeavoring to ascertain from the language used the intention of the testator. (*Fisher* v. *Fairbank,* 188 Ill. 187-191). The testatrix might well have had in mind the probability that the farm would have to be sold to pay debts, and in that event, under the construction contended for by the appellants, the whole purpose and intention of the will would have been subverted and the only legatees mentioned would take nothing, while the heirs, whom she specifically postpones in their favor, would take the whole of the estate. Such was not the intention of the testatrix as indicated in the will.

"It is claimed by appellants' counsel that the testatrix conferred upon the executor a mere power to lease or sell at the expiration of the term for which the farm was rented, and no legal estate in the land, and that, hence, the title descended to the heirs-at-law, who are therefore entitled to the proceeds. The estate of a trustee in real estate is commensurate with the powers conferred by the trust and the purposes to be effected by it. 'If a trustee is required to grant a fee, the fee must be conferred upon him.' (*Lawrence* v. *Lawrence,* 181 Ill. 248-251; *Lash* v. *Lash,* 209 id. 595-605). In *Kirkland* v. *Cox,* 94 Ill. 400-412, it is said, quoting from Perry on Trusts, sec. 305: 'If the trustee is to exercise any discretion in the management of the estate, in the investment of the proceeds or the principal or in the application of the income, or if the purpose of the trust is to protect the estate for a given time, or until the death of someone, or until division,' 'the operation of the Statute of Uses is excluded and the trusts or uses remain mere equitable estates.' And it is further said, quoting from the same

author, in section 315: 'Thus, if land is conveyed to trustees without the word 'heirs,' in trust to sell, they must have the fee, otherwise they could not sell. The construction would be the same if the trust was to sell the whole or a part, for no purchasers would be safe unless they could have the fee, and a trust to convey or lease, at discretion, would be subject to the same rule.' In the case at bar the executor is authorized to sell or lease at discretion, and, therefore, was vested with the fee in trust.

"The decree of the circuit court must be affirmed."

Accordingly, the judgment of the Appellate Court, affirming the decree of the circuit court, is affirmed.

*Judgment affirmed.*