## Martha E. Bowser, et al. v. D. Jane Mosier, Executrix, et al.

1. WILLS—*how construed.* In construing a will the court will strive to ascertain the intention of the testator; such intention is to be determined upon a consideration of the entire instrument; each clause and phrase in the will is to be given force and effect,

if possible; repugnant words which contravene the evident inten-
tion of the testator as clearly expressed may be rejected or trans-
posed; general provisions must yield to specific provisions; where
the clauses of a will are irreconcilable and insuperably repugnant,
the latter clause will generally prevail; and as an aid to a deter-
mination of the testator's intention, the court may consider the
nature and extent of his property.

2. HEIRSHIP—*construed.* The word "heirship" as employed in
the will in question in this case, construed to designate degrees
of kinship.

3. LIFE ESTATE—*will construed with respect to.* Held, from the
provisions of the will in question in this case, that the testator did
not intend that his wife should have a life estate in all of his
property.

4. BILL TO CONSTRUE WILL—*what question cannot be properly
determined in.* Whether or not a mortgage incumbrance should
be paid by the executors out of the general funds of the estate, is
a question which cannot be determined in a proceeding to construe
a will, where such question does not arise in such will as one of
construction.

Bill to construe will. Appeal from the Circuit Court of Cham-
paign County; the Hon. SOLON PHILBRICK, Judge, presiding. Heard
in this court at the May term, 1905. Reversed and remanded.
Opinion filed March 20, 1906.

MARY E. MILLER, for appellants; CUNNINGHAM & BOGGS,
of counsel.

F. M. GREEN & SON and GEORGE W. GERE, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a bill filed by appellees, D. Jane Mosier, executrix
of the will of Philip C. Mosier, deceased, and certain lega-
tees and devisees thereunder, against appellants, Martha E.
Bowser and George L. Pickett, and certain other claimants,
to construe said will and grant certain other relief.

The holographic will and codicils thereto, in question,
omitting the formal parts, are as follows:

2.   "After my lawful debts are paid, I give and bequeath
to my dear wife Mrs. D. Jane Mosier all my personal and
real estate of whatsoever kind or quality.   To have and to

hold and enjoy the rents and profits of the same during her natural lifetime.   Except what hereinafter may be mentioned to be disposed of otherwise.

3.   At the death of my dear wife, I give and bequeath to George T. Poage (who I raised) a life lease in and to the north half (½) of the northeast quarter of Section twenty (20) Township eighteen north of range fourteen west.   In Champaign County and State of Illinois.   And at his death the same shall go to his children.   In whom an absolute title shall vest.   Provided they, the said children, have a child or children born to them who live to enjoy the same.   Otherwise the title shall revert back to my estate to be enjoyed by my and my dear wife's relation according to their inheritance.

4.   To Volentine Jacobus (who I raised), I give and bequeath the south half of the said northeast quarter, section twenty (20) town 18 N. R. 14 W. to be enjoyed by him and children upon the same terms and conditions as that bequeathed to George T. Poage and his children.

5.   And in order that the said George T. Poage and Volentine Jacobus may share and share alike as near as possible, I direct that after my dear wife's death, Volentine Jacobus shall have the use or rent of the whole quarter section for the period of one crop season.   That he may balance up with the said George T. Poage on improvements.

6.   The property belonging to my estate at the death of my dear wife.   Exclusive of that bequeathed to George T. Poage and Volentine Jacobus or their children.   I direct and order that it or the proceed thereof shall be equally divided between my and my dear wife's relation according to their heirship.   The heirship not to descend further than to and include grand nephews and nieces.

7.   And I further order and direct that whatever of my estate by law would fall to Mrs. R. L. Poisal (my dear wife's sister) the same shall go to Mrs. Cory Moore, her daughter and in case of her death, then to Miss Minnie Moore, her grand-daughter, some as if originally inherited by her.

8.   And now in conclusion, I do hereby revoke and annul all former wills made by me.   And I do hereby appoint my dear wife Mrs. D. Jane Mosier administratrix and authorize the court to grant her letters of administration without bond

or surety, so the business of my estate may be settled up with as little delay as consistent to or with the interest of heirs or creditors, and whatever real estate laying outside of Champaign County and State of Illinois belonging to me or my estate at my death, I order and direct to be sold to the best advantage by my dear wife as administratrix and the proceed of said sale or sales after retaining ten (10) per cent. for trouble. Divide equally between my and her relations according to their heirship.

The real estate indicated is described as follows, viz.:

All of fractional sections seven, town 20, south of range 35 east. In Brevard County, State of Florida, 51.90 acres.

Southwest quarter of Sec. 32–101–N. R. 35 west 160 acres in the county of Jackson, State of Minnesota.

Lots 2 & 3 Sec. 10 and Lot 1 Sec. 11–100–36 W. in Dickinson County, State of Iowa 172.17 acres. Lots 2-3-81-83-84-86 & 92. In Cottage addition to the city of Des-Moines, in the State of Iowa, and the south sixty acres W. ½ S. W. 13-22-13 Coffey County, State of Kansas.

9. And I further order and direct, that any promissory notes falling due after my death and collected by my dear wife as administratrix of my estate. The principal of which shall be equally divided between my and my dear wife's relatives according to their heirship, except so much as she may want to retain for her individual use for. traveling expense or otherwise. Said sum retained shall not be to exceed twenty-five per cent. of the sum or sums collected.

First codicil:

Whereas I, Philip C. Mosier, of Homer, State of Illinois, did on the 4th day of March, A. D. 1897, make my last will and testament of that date, do hereby declaim this to be a codicil to the same.

I would first say by way of explanation that Pizarro C. Picket of Kingman, Kansas, Mrs. Martha E. (Hawkins-Rice) Bowser of Los Angeles, California, and George L. Picket of Anaheim, California, are my nearest of kin. And whereas George W. Hawkins, of Danville, State of Illinois, who at one time was the husband of the said Mrs. Martha E. Bowser and a separation took place and the said G. W. Hawkins has always treated me kindly, I therefore order and direct that twenty per cent. of the share of my estate

that would fall to Pizarro C. Picket and twenty per cent. of Mrs. Martha E. Bowser's share and ten (10) per cent. of George L. Picket's share shall go to the said Hawkins, provided he, the said Hawkins, lives to receive and enjoy it, the same otherwise this bequest shall cease at his death.

I would say by way of · explanation of Mrs. Rachel L. Poisal being disinherited in my said will, that I feared that if any part of my estate went into her hands at her death it would or a portion of it go to Byron L. Poisal, her son, and on his death would be inherited by his wife and thereby go in a direction not desired by me. But as the said Byron L. Poisal is now deceased, I still think best to not change my will as the said Byron L. Poisal's wife is still living and in case of the death of the said Mrs. Rachel L. Poisal, might have some claim through legal inheritance upon her estate.

Second codicil:

Whereas I, Philip C. Mosier, of Homer, State of Illinois, did on the 4th day of March A. D. 1897, make my last will and testament of that date, do hereby declare this to be a second codicil to said will.

I first would say I do hereby exclude any and all persons not blood relations to myself or to my dear wife from sharing any portion of my estate after my death or the death of my dear wife, except those mentioned in my said will and first codicil. To wit: George T. Poage, Volentine Jacobus and George W. Hawkins, who are not blood relations.

Secondly, I do hereby disinherit any one who may try to break my said will by themself or in combination with others try to break my said will.

Third codicil:

Whereas I, Philip C. Mosier, of the town of Homer, State of Illinois, did on the 4th day of March, 1897, make my last will and testament of that date, do hereby declare this to be my third codicil to said will.

I would first say the bequests made in said will to George T. Poage and Volentine Jacobus are hereby revoked and in place of said bequests, I give and bequeath to the said George T. Poage the farm lately purchased of W. J. Johns, of Taney County, Missouri, together with fifty-six acres lately secured of the U. S. Government through the said George T. Poage said lands are described as follows viz:

All of the W. ½ of Lots three and four (3 & 4) northwest quarter Sec. 1 & 2 & 3 in the northeast qr. of Sec. two (2) all in town 24 R. 19 W. in Taney County, Missouri, and all of the S. W. qr. of the S. W. qr. of Sec. 35 in town 25 R. 19 in the county of Christian, and the E. ½ of Lot 4 N. E. qr. Sec. 2, town 24 N. R. 19 W. of 5th P. Meridian contain in all three hundred and forty-two (342) acres more or less—valued at $2,000 dollars.

And in addition to the above bequest, I give and bequeath to the said George T. Poage four thousand ($4,000) dollars, less what the said George T. Poage may be indebted to me, either directly or indirectly at my death.

To the said Volentine Jacobus, I give and bequeath lot three (3) and fifteen feet off the north side of lot four (4) James Busey's addition to the town of Urbana, known as the Eggleston property, which I value at three thousand ($3,000) dollars and lot seven (7) block four (4) G. W. Webber's 1st ad. to the town of Urbana (valued at $1,000) all in the town or city of Urbana, County of Champaign, and State of Illinois, and known as Sophia Mollendorf property, and in addition to the above bequests, I give and bequeath to the said Volentine Jacobus two thousand $2,000, dollars, making to each of these parties Poage and Jacobus, six thousand dollars each, less what they may be indebted to me at my death. These bequests to be enjoyed by the said parties after the death of my dear wife and no sooner."

The only questions presented for determination on this appeal are, first, does the widow, D. Jane Mosier, take under the will a life estate in all of the real and personal property of the testator and an absolute estate in 25 per cent. of the principal of the promissory notes falling due after the death of the testator and collected by her, and in 10 per cent. of the proceeds of the sale of real estate lying outside of Champaign County, Illinois, or does she take a life estate, only in the real and personal property of the testator exclusive of the principal of the said promissory notes falling due after his death and said real estate lying outside of Champaign County, Illinois; second, does the principal of the promissory notes falling due after the death of the testator,

less 25 per cent. to be retained by the widow, and the proceeds of the sale of lands lying outside of Champaign County, Illinois, less 10 per cent. to be retained by the widow, constitute a specific legacy to the relatives of the testator and his wife, which vested in such relatives upon the death of the testator, and is payable to them as soon as realized by the executrix; third, is the mortgage incumbrance on the land in Missouri, devised in fee to George T. Poage, subject to the life estate of the widow, amounting to $1,054.80, and which the chancellor was justified in finding the testator assumed to pay, a proper charge against his estate, payable out of the general funds of the estate.

The decree of the Circuit Court in construing the will adjudges as follows:

First, that upon the death of D. Jane Mosier, the widow of the testator, distribution is to be made of his estate, excepting that portions of the real estate devised to George T. Poage and Volentine Jacobus, as follows: To George T. Poage, $4,000 less what he may be indebted to the estate; to Volentine Jacobus, $2,000, less what he may be indebted to the estate; one-half of the balance to the brothers and sisters of the testator, or their heirs, and the remaining one-half to the brothers and sisters of D. Jane Mosier, or their heirs. No distribution to be made, however, beyond the grand-nephews and nieces of either the testator or D. Jane Mosier, excepting, however, from the interest of P. C. Picket, Martha E. Bowser and George L. Picket, the bequest to George W. Hawkins, provided said Hawkins lives to receive the same. Also excepting the interest of Mrs. R. L. Poisal, a sister of D. Jane Mosier, which interest shall go to Mrs. Cora Moore, or her daughter, Minnie Moore, as provided by the will of the testator.

Second, that the clauses of the will directing the sale of the lands lying outside of Champaign County, Illinois, and relating to the collection of notes due after the death of the testator and the distribution of these funds, should be construed together as a residuary clause of said will.

Third, that the funds derived from the sale of lands lying

outside of Champaign County, Illinois, and the sums collected from the notes falling due after the death of the testator, constitute a general fund to be distributed under the said residuary clause.

Fourth, that the testator's intention was to provide equally for George T. Poage and Volentine Jacobus from his estate, and that the incumbrance on the land in Missouri devised to George T. Poage should be paid by the executrix.

The value of the testator's estate as inventoried by the executrix, and as appraised for taxation under the inheritance tax law, is as follows:

Principal of notes falling due after the death of
the testator ................... ...... $6,900.00
Principal of other notes........... ....      371.94
Cash on hand.....................      339.49
Real estate in Champaign County, Illi-
nois .......................... ....... 24,880.00
Real estate lying outside Champaign
County, Illinois ................. 13,374.00
                                        _____
    Total .......................... ...$45,865.43

The land in Missouri devised to George T. Poage is appraised at $2,000, and was subject to a mortgage incumbrance of $1,054.80, which the testator assumed to pay. The real estate in Champaign County devised to Volentine Jacobus is appraised at $2,650.

It is elementary, that in construing a will the court will strive to ascertain the intention of the testator; that such intention is to be determined upon a consideration of the entire instrument; that each clause and phrase in the will is to be given force and effect, if possible; that repugnant words, which contravene the evident intention of the testator as clearly expressed, may be rejected or transposed; that general provisions must yield to specific provisions; that where the clauses of a will are irreconcilable and insuperably repugnant, the latter clause will generally prevail; that as

an aid to a determination of the testator's intention, the
court may consider the nature and extent of his property.
Rountree v. Talbot, 89 Ill., 246; Dickison v. Dickison,
138 Ill., 541; Greenwood v. Greenwood, 178 Ill., 387; Mor-
rison v. Schorr, 197 Ill., 554; Olcott v. Tope, 213 Ill., 124;
Bennett v. Bennett, 217 Ill., 434.

Considering clauses 8 and 9 by themselves there can be
little room for doubt but that the testator intended thereby to
bequeath to the relatives of himself and his wife the pro-
ceeds of the sale of certain real estate lying outside of Cham-
paign County, Illinois, less 10 per cent. to be retained by
his wife, and the principal of promissory notes falling due
after his death which should be collected by his wife, less
25 per cent. to be retained by her, free from any life estate
therein of his wife.

These legacies are, in themselves, specific and definite.
The real estate to be sold is particularly described and the
principal of the notes to be collected is definitely determined.
We are unable to understand upon what theory clauses 8 and
9 can be treated as residuary clauses of the will. They do
not purport in terms to dispose of the residue of the estate—
that is, estate not otherwise disposed of—but dispose of
property specifically ascertained and identified.

It is urged by, counsel for appellees that the intention of
the testator to give his wife a life estate in the property
mentioned in clauses 8 and 9 and to postpone its distribu-
tion until her death, is manifest because a division of it by
the widow, among the relatives of herself and the testator
according to their heirship, is impossible in her lifetime,
her heirs not being ascertainable until her death. If the be-
quests were to the heirs of the testator and his wife, there
would be force in the argument, but the bequests are to the
relatives of the testator and his wife—that is, to persons con-
nected by kinship or consanguinity to the testator and his
wife—such persons, relatives, were a class ascertainable dur-
ing the life of Mrs. Mosier.

The word "heirship," employed by the testator in clauses
8 and 9, we think was intended by him to designate degree

of kinship, so that transposing the phrase used, it would read "according to their degree of kinship."

That the testator did not intend his wife should have a life estate in all of his property, seems clear by reference to the second clause of the will, wherein he says: "After my lawful debts are paid, I give and bequeath to my dear wife, Mrs. D. Jane Mosier, all my personal and real estate of whatsoever kind or quality. To have and to hold and enjoy the rents and profits of the same during her natural life, *except what hereinafter may be mentioned to be disposed of otherwise.*" If the testator's wife has a life estate in all of his property, and the specific bequests in clauses 8 and 9 are not operative to vest in the legatees an estate in 90 per cent. of the proceeds of sale of lands and 75 per cent. of the principal of notes collected, unincumbered by such life estate, the language in clause 2, quoted in italics, must be held to be meaningless. That language clearly expresses an intention on the part of the testator to dispose of a portion of his estate otherwise than subject to a life estate in his wife, and it can only relate to the disposition made by clauses 8 and 9, because all other bequests in the will and codicil are made expressly and unmistakably subject to her life estate therein. Furthermore, in the second codicil to his will, the testator uses language as follows: "I first would say I do hereby exclude any and all persons not blood relations to myself or to my dear wife from sharing any portion of my estate after my death or the death of my dear wife, except those mentioned in my last will and first codicil, to-wit: George T. Poage, Volentine Jacobus and George W. Hawkins, who are not blood relations." If no part of the testator's estate was to be distributed during the life of his wife, why should he, in this general reference to bequests theretofore made by him, by the use of the words "my death or," in effect anticipate a distribution after his death and before the death of his wife. If clauses 8 and 9 be construed as giving to the relatives of the testator and his wife certain legacies free from the wife's life estate, and clause 6 be construed as a residuary clause, giving to the

same relatives the property remaining at the death of his wife, except that bequeathed to George T. Poage and Volentine Jacobus, the use by the testator of the words "my death or" quoted above may be given some significance. Excluding such construction, the words "my death or" are without meaning and tend merely to confuse. If no distribution to relatives was intended before the death of his wife, the testator would have omitted the words "my death or" and only used the words "after the death of my dear wife."

The testator employs no expression in clauses 8 and 9 showing an intention to postpone the vesting of the legacies in the relatives of himself and his wife until the latter's death, and that he purposely avoided employing any such expression in those clauses, seems probable in view of the fact that in the third codicil to his will, wherein he devises and bequeaths certain property to George T. Poage and Volentine Jacobus, he, by apt terms, postpones their enjoyment of such devises and bequests until after the death of his wife.

It is also worthy of notice that the testator, in the eighth clause of his will, appoints his wife executrix, and waives the giving of security by her as such, to the end that his estate may be settled with as little delay as is consistent with the interest of his heirs and creditors. If the testator gave his wife a life estate in all of his property, his heirs could have no interest in any portion of it until her death, and a speedy settlement of his estate could not in any way accelerate the vesting of the interest of such heirs.

It is urged on behalf of appellees that the sixth clause of the will manifests a clear intention on the part of the testator to give to his wife a life estate in all of his property, and that a proper construction of that clause is conclusive of her rights, in that regard under the will. The sixth clause should, we think, be held to be the residuary clause of the will. By no other clause of his will does the testator dispose of his estate not specifically devised and bequeathed to certain individuals, and but for that clause the larger part of his estate, viz.: all of his real estate in Champaign County, Illinois, except that devised to Volentine Jacobus, and all of

his personal property except promissory notes falling due after his death, would be intestate.

True, the language of that clause, considered by itself, may be construed as expressive of an intention that a division of all of his property, except that bequeathed to George T. Poage and Volentine Jacobus, between his and his wife's relatives, should not be made until the death of his wife, but construing the clause as it should be, in connection with the other clauses of the will, it may well be held to relate only to the disposition of his property not otherwise disposed of. If clauses 8 and 9 be construed as giving to certain legatees specific legacies unincumbered by a life estate in testator's wife, the property thereby bequeathed would have been distributed to such legatees in the lifetime of his wife, and at her death, such property would not belong to his estate. From that point of view, the language of the sixth clause, viz.: "The property belonging to my estate at the death of my dear wife," can only refer to property in which the testator's wife had a life estate, and which was not to be distributed until her death. When so interpreted and construed, the sixth clause is not inconsistent with, or repugnant to, any other provision in the will.

It is insisted by counsel for appellees that the construction of the will contended for by appellants will operate to impoverish the widow of the testator, and give a large portion of the estate to distant relatives; that the will shows upon its face that the testator had great affection for his wife, and it is unreasonable to suppose that he intentionally preferred such relatives, and gave his wife less of his estate than she would have been entitled to under the law, if he had died intestate.

The intention of a testator with reference to the disposition of his estate is to be determined, if possible, by an interpretation of the language employed by him in giving expression to such intention, and when the testator's intention can be so determined, it must prevail. It is only in case of doubt of such intention, arising from inability clearly to interpret the language so employed, that the considera-

tions suggested by counsel for appellees may be availed of to aid in arriving at the true intention of the testator. By the terms of the will in question, as we construe it, appellee, D. Jane Mosier, is given absolutely 25 per cent., or $1,725, of the principal of notes falling due after the death of the testator, and 10 per cent., or approximately $1,500, of the proceeds of sale of the lands lying outside of Champaign County, Illinois, and in addition is given a life estate in real estate in Champaign County, valued at $24,880, and in real estate in Missouri valued at $2,000, and in all personal property except the principal of notes falling due after the testator's death. That she would have been entitled to a much larger share of the estate of her husband, if she had exercised her option to renounce under the will, does not affect the question involved. If the will should be construed as giving her what she here claims—a life estate in all of the property of her husband—it would still fall far short of what she would have received had she renounced under the will. The presumption is that she, as well as the testator, knew the law, and they must be held to have acted with that knowledge.

The question, whether or not the mortgage incumbrance on the land in Missouri, devised to George T. Poage, is a proper claim against the testator's estate, and should be paid by the executrix out of the general funds of the estate, does not properly arise for determination in this proceeding in equity to construe the will, but is determinable in the County Court where the administration of the estate is now pending.

The chancellor having found that the testator assumed to pay the incumbrance as a part of the purchase price for the land, such incumbrance became the personal debt of the testator and its payment, not having been made a charge on the land by the terms of the will, it was provable against the testator's estate, and the executrix was bound to pay the same.

The decree is reversed and the cause remanded for further proceedings not inconsistent with the views here expressed.

*Reversed and remanded.*