KIRK *et ux.* *v.* KIRK *et al.*

(*Supreme Court, Special Term, Albany County.* January 10, 1891.)

</div>

1. TRUSTS—ESTATE OF CESTUIS QUE TRUSTENT.

    Testator devised his property to his wife in trust to receive $2,500 of the income per year to her own use, and to distribute the residue of the income equally among his children. By the sixth clause, he directed that, immediately after the death of his wife, the surrogate should appoint two commissioners, whom testator authorized to divide his estate into as many shares as he had children, including such as had died leaving issue, and allot one share to each child, and to the issue of each deceased child; and that, on and after the division and allotment, the commissioners should hold the shares allotted to testator's daughters in trust for their separate use during their respective lives, and at the death of any daughter to pay over her share to her issue. The will further directed that on such division the share of any son who was 25 years old should be paid to him, and provided that the share of any son under that age should be held in trust. *Held*, that the daughters were only *cestuis que trustent* for life.

2. SAME—PERPETUITIES.

    In such case the trusts in favor of the daughters for life took effect at testator's death, and therefore such trusts, with that which preceded them, were limited by two lives in being in each case, and were not extended for an uncertain time during the appointment of the commissioners and their action.

Action by William Kirk and Elizabeth, his wife, against John Kirk and others for partition. Mahoney & Bros., the purchasers at the partition sale, move to be relieved of their bid.

*Worthington Frothingham,* for plaintiffs. *Lewis W. Pratt,* for Althéa A. Kirk. *John Whalen,* for Mahoney Bros., purchasers. *Edward W. Rankin,* for defendant Elizabeth K. Pruyn. *Albert Hessberg,* for defendant Charlotte Kirk. *Charles Krank,* guardian *ad litem.* *Myer Nussbaum,* referee, *pro se.*

LEARNED, J. This is a motion to set aside all the proceedings subsequent to service of summons and complaint. The action is for partition, and was commenced May, 1889. A reference was had October, 1889, and on the re-

port an interlocutory judgment, January, 1890. A sale was made of premises in New York in March, 1890, for $45,700, and 10 per cent. was paid by the purchasers, Mahoney Bros. Other property lying in Albany is to be partitioned by commissioners. No further proceedings have been had. The purchasers decline to complete the sale, on the ground that it will not give them a good title, owing to defect of parties defendant and other irregularities. The moving party claims that there is a defect of parties, and that there are irregularities as to appointment of guardian *ad litem,* and failure to file notice of *lis pendens.* The title to the lands comes through the will of Andrew Kirk, who died October 27, 1857. By his will he gave his property to his wife, Marilla, his executrix, as trustee for her life, in trust to receive $2,500 of the income per annum to her own use, and to distribute the residue of the income equally among his children, (the details are unimportant.) The question here arises on the subsequent directions. By the sixth clause he directed that, immediately after the decease of his executrix, the surrogate of Albany county should appoint two commissioners, whom the testator authorized to divide his estate into as many equal parts as he had children, both living, and also those who had died leaving issue then living; and the commissioners were to set apart and allot one equal share to each child, and one like share to the issue of the deceased child. The seventh clause says: "Upon and after the division of [and] allotment hereinbefore sixthly directed, I hereby authorize and direct the commissioners   *   *   *   to have and to hold the several parts, shares, and portions which shall be allotted to my daughters, respectively, then living, in trust for the sole and separate use, benefit, and behoof of my said daughters during their several and respective lives,   *   *   *   and in further trust to receive all the rents, issues, profits, and income of the several shares, parts, and portions to my said daughters, respectively, allotted, and apply the same to the use of my said daughters, respectively,   *   *   *   and in further trust at the death of such daughters, respectively, to assign, transfer, pay over, and convey the part, share, or portion to the daughter so deceased, allotted as aforesaid, to the lawful issue of said daughter, if any there should be, living at her death, the issue of any deceased issue of such daughter to take in all cases *per stirpes,* and not *per capita;* and, if there be no lawful issue of such deceased daughter living at her death, then to assign, transfer, pay over, and convey the same to the brothers and sisters of such deceased, and to the lawful issue of any who may be dead.   *   *   *   Such issue of any deceased brothers and sisters to take *per stirpes,* and not *per capita,*" etc. The eighth clause directs the commissioners, upon such division, to pay and convey his respective share to any son who shall be 25 years old. The ninth directs them to pay and convey one-half of his share to any son who shall be 21; to pay him the income of the money till he is 25; then to convey the said other moiety. The tenth makes a trust to apply the rents and profits of his share to any son under 21, till he shall reach 21 and 25, as above provided. Marilla Kirk died November 13, 1889, previously to which time William Kirk had been appointed trustee in her place. At her death Isabella K. Pruyn, one of the daughters of Andrew Kirk, deceased, was living, and she is a party defendant. She had, and has, two sons,—Frank Pruyn, who is married, and has no children; and Andrew K. Pruyn, who is married, and has three minor children, viz., John McE. Pruyn, Francis McE. Pruyn, and Agnes Pruyn.

The plaintiff in this complaint alleged, and the interlocutory judgment finds, that Isabella K. Pruyn was entitled to one-seventh of the estate; there being seven children, or representatives of deceased children, of Andrew Kirk. The purchasers and the moving party in this motion insist—*First,* that Isabella K. Pruyn was merely a *cestui que trust* for her life, and took no estate in the land; *second,* that, at any rate, she had only a life-estate, and that the remainder in fee would go to her issue living at her death, or, if none, then

to the other descendants of Andrew Kirk, as specified in clause 7. They insist, therefore, that there is a fatal defect of parties. An application was made to the surrogate before the commencement of this action for the appointment of commissioners under the will, and he refused to appoint.

In order to construe the will, the whole must be examined. The testator first created a trust for the life of his wife, for the benefit of herself and her children, making her the trustee. Then he provided a scheme for dividing or partitioning the estate by commissioners to be appointed by the surrogate. On this division being made, he gave one equal share absolutely to the issue of any deceased son, and he gave absolutely one share to each son who should be 25 years old. He gave one-half of a share to each son who should be 21, and the other half in trust till he should be 25. And he put the share of each son who was under 21 in trust to be held by the commissioner till he should be 21 and 25, as above provided. Then, in carrying out this scheme, he put each daughter's share in trust for her during her life, to be held in trust by these commissioners, and then to go absolutely as above stated. Now, it is argued by the plaintiff that the trust which the testator thus attempted to create for his daughters, respectively, did not, according to its terms, take effect until the actual appointment of commissioners, and until their actual division and partition. And this argument rests largely on the words with which clause 7 begins, "Upon and after the division and allotment," etc. Therefore it is urged by the plaintiff that this trust, with that which preceded it, was not limited by two lives in being, but that it extended for an uncertain time, viz., during the appointment of the commissioners and their action. This argument would be sound if the construction of the will is that the trust did not arise until after the division and allotment. Now, it is true that no trustees are named by the testator, except the commissioners to be appointed by the surrogate. But it is a most familiar rule that a trust shall not fail for want of a trustee. If the trustee named in a will died before the testator, the devise does not lapse. Either the heir or residuary legatee is treated as trustee, or the trust is held to vest in the court. At any rate, the trust is valid. So here there is no trustee, but the intention of the testator to create a trust stands good. The commissioners were to be appointed for the purpose of making a division. The rights of the several children of the deceased were not suspended until the division was made. This division was to be made as well in respect to the shares of the sons over 25 as in respect to the shares of the daughters. And it is not to be understood that the shares of the sons who were over 25 years, and who were to take absolutely by the eighth clause, did not vest at once on the testator's death. They took their undivided portion. The commissioners made partition. It would be a forced construction which should hold that the shares of these sons who were over 25 did not vest at once because the eighth clause says, "Upon and after the division aforesaid." The clear meaning is that the devises and bequests of the several shares took effect at once on the undivided portions. The action of the commissioners was not to change the estate of the parties, but was merely to divide that which had previously been owned and undivided. *Henderson* v. *Henderson*, 113 N. Y. 1, 20 N. E. Rep. 814. I cannot, therefore, think that the language of the seventh clause, which says, "Upon and after the division and allotment," postponed the rights of the daughters to their respective shares, any more than the similar language in the eighth clause postponed the estate of the sons. The same words begin the ninth clause also. The intention of the testator plainly was that, as to his daughters, their respective shares should be held in trust during their lives, with remainder over; and the court should give effect to that intention. The will is very carefully drawn, with an evident design not to extend any trust beyond the lawful time. And if a construction can be given which will permit the intention of the testator to stand, that should be adopted. I

think he plainly intended that his daughters' respective shares should be held in trust at once. It may often happen that, by the delay of paying debts or settling an estate, the specific property to be held in trust cannot be designated for more than a year after the testator's death. But that is no suspension of the trust, and does not invalidate it. So in this case the trust is not invalidated because the property remains an undivided seventh of the estate. I am therefore of the opinion that Mrs. Pruyn took her interest only as *cestui que trust* for life.

It was said on the argument that, as she was a party, a partition would be good as to her, although no trustee had been appointed. No suggestion being made that this view is incorrect, I do not pass upon it. So the question has been suggested whether it would be sufficient to bring in her children and grandchildren above named. It was urged that, should they die before her, the remainder would go to other descendants of the testator, who are now very numerous. I am not called upon on this motion to decide that question. This motion is made in respect to those children and grandchildren only. It is urged by the plaintiff that, if there were a trust, then the whole estate vested in the trustee; hence that the persons in remainder were not necessary parties to this action. 1 Rev. St. p. 729, § 60. Assuming, then, that in the want of any other trustee the trust vested in the court, we must notice section 67, 1 Rev. St. p. 730. This says that, where the purposes for which an express trust is created have ceased, the estate of the trustee also ceases. And also section 61, 1 Rev. St. p. 729, showing that lands may be devised subject to trust. So that a devise over, after a trust for life, is valid, and the devisee has a legal estate. Here there was a devise over after the trust-estate for the life of Mrs. Pruyn. In this view of the case, I do not see how the proceedings can stand. The purchasers cannot be compelled to complete their purchase, and are entitled to be repaid their 10 per cent.

As to the irregularities respecting the guardian *ad litem*, if the rest of the proceedings are to be set aside it is safer that there should be a new appointment of that guardian in the proper form and with the proper bond. It is possible that, if the action was otherwise in such shape as to make a good title for the purchaser, these irregularities might be amended. But it is easier to make a new appointment, about which there will be no doubt. The motion asks that the court direct the filing of a notice of *lis pendens*. I do not think the court should control this matter. If the plaintiff neglects to file it, his proceedings will, I think, be greatly embarrassed. But the filing is for his protection. Code Civil Proc. §§ 1670, 1671. I should think that, without filing such a notice, it would be troublesome to satisfy a purchaser in respect to the title. I am not certain that the committee of the lunatic is a necessary party. But it is at least proper that she should be permitted to come in and protect the rights of the lunatic. The complaint avers that the plaintiff has also personal property of the estate, and that he has received rents and profits and paid moneys, and that he desires to render an account. Some accounting has been had already. It seems necessary, in the view above expressed, that this accounting should be again taken, when proper parties shall be before the court. I am not certain whether it should be ordered until all necessary parties shall be in. So as to the appointment of a receiver. As the order to be drawn in this case will need some care, I will reserve the question as to appointing a receiver until the settlement of the order. Perhaps some satisfactory arrangement can be made which will render this unnecessary. I think there is some force in the claim of the moving party that it is not equitable that the plaintiff, if he has cash on hand received from income, should be allowed to charge that against his share of real estate, instead of dividing it among those interested. The order should contain an adjustment up to this time of the costs and expenses of the referee, especially in making the sale, which is not confirmed, so that the amount ow-

ing him shall be allowed in the final settlement of the case. If any other matters shall be suggested on the settlement of the order, I shall feel at liberty to consider them, although they are not herein specified.