(121 N. W. 202.)

---

HALVOR J. HAGEN v. SEVERIN SACRISON AND GUNHILD GUNDERSON.

Opinion filed November 10, 1909.

### Wills — Perpetual Charities — Suspension of Power of Alienation — Trusts — Non-Action of Trustee — Discretion to Delay Sale.

1. By his will, the testator, after providing a competency for his son and sole heir at law, directed that the remainder of his estate (specifically describing the same) shall be devoted to a worthy perpetual charity by the establishment in his native country, the Kingdom of Sweden, of a children's home "for the reception, care, nurture, succor and support of the destitute children," and directing that such home, when established, shall be under the charge and custody of the proper officer in Torrskog socken having the proper supervision of the poor. To such end he directed his executor to

sell the real property described "at such time or times after my death as in his best judgment, will bring the most money into his hands, but, in any event, not later than five years after my death, unless such period be extended by order of the county court." Then follow certain recommendations to his executor that he arrange with proper authorities of Torrskog socken for the contribution by such socken of a sum of money equal to one-half the cost of establishing and maintaining such home, if possible, and that the services of such authorities and officers in and about the control and management of the home shall forever be free of charge as far as the fund therein created is concerned. Then follows the following:

"I desire that, in case any of the matters of detail herein set forth cannot, either by reason of lack of legal authority or because of conflict with any law or any cause, be carried out as herein expressed, it shall be understood that my directions herein are merely recommendations and that the same shall not stand in the way of the accomplishment of the main object of this bequest, to wit, the amelioration of the condition of the poor children in Taskog Sogn aforesaid.

"Inasmuch as it is impossible for me to, even generally, direct the carrying out of the intent of this bequest, it is necessary that a great latitude be left to my executor in the accomplishment of my main object; and having full confidence in him, both as to his ability and integrity, I willingly leave every matter of judgment and discretion entirely to him, and in all matters pertaining to this bequest, I grant to him the fullest powers conformable to law, the same as if such matter were specifically mentioned and he thereunto especially empowered."

*Held*: (1) That the direction to sell the real property described operated to convert the same into personalty. (2). That the mere creation of the trust therein mentioned does not, ipso facto, suspend the power of alienation. That such power of alienation is only suspended by such a trust, where a trust term is created, either expressly or by implication, during the existence of which a sale by the trustee would be in contravention of the trust. Where the trustee is empowered to sell the land, without restriction as to time, the power of alienation is not suspended, although the alienation in fact may be postponed by the nonaction of the trustee, or in consequence of a discretion reposed in him by the creator of the trust.

The statute of perpetuities is pointed only to the suspension of the power of alienation, and not at all to the time of its actual exercise.

The statute against perpetuities is not violated by directions in the will which may involve some delay in the actual conversion of the property, arising from any cause; nor does the fact that the trustee is vested with a discretion to delay the sale of the real estate, not exceeding a certain period mentioned, involve an unlawful suspension of the power of alienation.

### Wills — Charitable Trusts — Liberal Construction.

2. Charitable trusts, which is the character of the trust in the case at bar, are highly favored, and a liberal construction will be adopted in order to render them effectual.

### Wills — Charities — Construction — Condition Precedent.

3. The provisions of the bequest directing the executor to make certain arrangements, if possible, with the authorities in Torrskog socken regarding the establishment and maintenance of such home, are construed as mere recommendations of the testator, and not as conditions precedent to the carrying out of such bequest.

### Wills — Charities — Testator May Dispose as He Likes within the Law — Discretion of Trustee.

4. The provisions of the will relating to such charitable bequests are not too vague, indefinite and uncertain to be legally enforceable. The owner of property may do as he pleases with it, provided the disposition be not to unlawful purposes, and what he may do himself he may do by agent while living, or by his executor after death. It is, accordingly, *held* that the testator had a legal right to vest in his executor the widest possible latitude for the exercise of his judgment in carrying out such bequest. The provisions of the will, which it is contended, render the same indefinite and uncertain, are, as above stated, merely recommendations, and not conditions precedent. Furthermore, the record discloses that the muicipality known as "Torrskog socken" is ready and willing to accept and carry out the terms of the trust, and, in any event, these are questions which do not affect the validity of the bequest.

### Wills — Charities — Certainty of Trust.

5. The fact that the will fails to expressly designate a trustee by name to hold such fund and to administer the trust does not operate to defeat the trust, when, by the language of the will, aided by extrinsic evidence for the purpose of identification, it can be determined whom the testator intended. The fundamental maxim applies that, "That is certain which is capable of being made certain."

*Held,* construing the will in the light of the foregoing rule, that the testator manifestly intended to designate as trustees of this fund such officers and their successors in office as have, under the laws of Sweden, supervision of the poor in Torrskog socken. Whether such designation operates in law as a designation of the municipality of Torrskog socken as such trustee, not determined.

### Wills — Charities — Trustees in Foreign Country — Refusal to Act — Presumption that Foreign Court Would Appoint.

6. Where a charitable bequest is made to trustees in a foreign country, the court will not assume that, should such trustees refuse

to act, a foreign court will permit the trust to fail, and will assume that it will appoint a trustee. The general rule is that a trust shall never fail for want of a trustee.

## Wills — Charities — Title to Realty Pending Conversion.

7. Until the real property is actually converted into money by the exercise of the power in trust conferred upon the executor, the legal title thereto rests in the executor as trustee by necessary implication, or in the heir at law for want of the designation of a trustee in the will. If in the latter, it is not by virtue of the will but by operation of law on account of the failure of the testator to designate such trustee in his will.

## Wills — Charities — Power of Sale — Exercise of Power.

8. Such will confers upon the executor a power in trust to sell and convert such real property into money, and such power may be executed without any act on the part of the heir, even though he be held, by operation of law, to be the trustee of the legal title to these lands.

## Wills — Certainty as to Beneficiary.

9. Construing the language of the will, *held*, that such will is not void for uncertainty as to the beneficiaries. The intention of the testator apparently was to restrict such charity to the poor and destitute children in Torrskog socken, and the class of persons intended as the objects of his bounty is sufficiently designated. The general class designated may or may not include the pauper poor. This was a matter which he had a legal right to and did impliedly delegate to the trustees of the fund to be administered; such trustees being impliedly clothed with the incidental power to select the individuals, within the general class, who are to partake of his bounty.

Appeal from District Court, Richland county; *Allen, J.*

Action by Halvor J. Hagen against Severin Sacrison. Judgment for plaintiff, and defendant appeals.

Affirmed.

*W. S. Lauder* and *Ink & Wallace,* for appellant.

Where a trust in a will is void, power of sale falls with it and the property descends to the heirs. Jones v. Kelly, 72 N. Y. Supp. 24; Harrington v. Pier, 82 N. W. 345; McHugh v. McCole, 40 L. R. A. 724; Haward v. Peavey, 21 N. E. 503; 1 Williams on Exrs. 663, et seq.; Read v. Williams, 125 N. Y. 560; Parker v. Linden, 113 N. Y. 28, 20 N. E. 858; Penfield v. Tower, 1 N. D. 216, 46 N. W. 413.

Suspension of the power of alienation must be based on lives.

Moore v. Moore, 47 Barb. 260; Henderson v. Henderson, 46 Hun. 509; Hawley v. James, 16 Wend. 61; Hone v. Van Schaick, 20 Wend. 564; Garvey v. McDevitt, 72 N. Y. 556; Cruikshank v. Chase, 113 N. Y. 337, 21 N. E. 64; DeWolf v. Lawson, 21 N. W. 615; Booth v. Baptist Church, 126 N. Y. 237, 28 N. E. 238; Trowbridge v. Metcalf, 5 App. Div. 323, 39 N. Y. Supp. 241; People v. Simonson, 126 N. Y. 299, 27 N. E. 380; Brandt v. Brandt, 13 Miscl. 433, 34 N. Y. Supp. 684.

The will is void for uncertainty of trustee. King v. King, 3 Pac. 436; White v. Howard, 46 N. Y. 144; McCord v. Ochiltree, 8 Blackford, 15.

Also for uncertainty of beneficiaries. Timmerman v. Dever, 17 N. W. 230; 29 Am. & Eng. Enc. Law, 1056; Anderson's Law Dictionary, 1089; Langley v. Barnstead, 63 N. H. 247; Mock v. Murcie, 9 Ind. App. 536; In re Extension Hancock Street, 18 Pa. St. 26; Fosdick v. Hempstead, 11 L. R. A. 715; Attorney General v. Clarke, 2 Amb. Case, 221, p. 422; Tyssen, Char. Bequests, p. 141; In re Hoffen's Estate, 36 N. W. 407; Howard v. Peace Soc., 49 Me. 288.

A power given an executor to select beneficiaries must be definite. Downing v. Marshall, 23 N. Y. 366; Holland v. Alcock, 108 N. Y. 312, 16 N. E. 305; Tilden v. Green, 130 N. Y. 29, 14 L. R. A. 33; Read v. Williams, supra; People v. Powers, 147 N. Y. 104, 41 N. E. 432; Hope vs. Brewer, 136 N. Y. 126, 32 N. E. 558; Ayde v. Smith, 44 Conn. 60, 26 Am. Rep. 424; Fifield v. Van Wyck, 94 Va. 557, 64 Am. St. Rep. 746; Gambel v. Trippe, 75 Md. 252, 15 L. R. A. 235; Pritchard v. Thompson, 95 N. Y. 76; Lane v. Eaton, 69 Minn. 141, 38 L. R. A. 669; Heiss v. Murphey, 40 Wis. 276; In re Hoffin's Estate, 36 N. W. 407; Scott v. West, 24 N. W. 161; People v. Powers, 147 N. W. 104, 35 L. R. A. 502; In re Fuller's Will, 44 N. W. 304.

Courts cannot found charities; testator must devise his own scheme. Bascom v. Albertson, 34 N. Y. 584; Beekman v. Bonsor, 23 N. Y. 306.

Trustee must be capable of taking and holding. Kirk v. King, 3 Pa. 436; White v. Howard, 4 N. Y. 144; Green v. Dennis, 6 Conn. 293, 16 Am. Dec. 58; State Methodist Episcopal Church v. Warren, 28 Md. 338; Lane v. Eaton, supra.

*Chas. E. Wolfe,* for respondent; Swedish Vice Consul, St. Paul, Minn., of counsel.

The rule against perpetuities is relaxed in favor of charities. Ould v. Washington Hospital for Foundlings, 24 L. Ed. (U. S.) 450.

Statute as to perpetuities is not violated where title can vest in the heirs or executor, subject to the execution of the trust. Baker v. Copenbarger, 151 Ill. 103; Downing v. Marshall, 23 N. Y. 366.

Device will not fail where intention is revealed, although not expressed with technical accuracy. Skinner v. Harrison Township, 18 N. E. 529; Van Gorder v. Smith, 99 Ind. 404; Bell County v. Alexander, 22 Tex. 351.

"The poor" of district, mean those maintained at public expense. Heuser v. Harris, 42 Ill. 425; Prickett v. People, 88 Ill. 115; Preachers Aid Society v. England, 106 Ill. 125; Mary's Succession, 2 Rob. 438; Sickles v. New Orleans, 29 C. C. A. 204; State v. Osawkee Twp., 14 Kan. 418; State v. Gerard, 37 N. C. 201; Beardsley v. Selectmen, 53 Conn. 489.

A municipality charged with care of the poor, can be compelled to act as trustee. Perin v. Carey, 16 L. Ed. 701; McDonogh v. Murdoch, 14 L. Ed. 732; Dailey v. New Haven, 14 L. R. A. 69; Craig v. Secrist, 54 Ind. 419; Pond v. Berg, 10 Paige Ch. 140: Masterson v. Townshend, 10 L. R. A. 816; Holmes v. Walter, 62 L. R. A. 986; Moran v. Moran, 39 L. R. A. 204; Crerar v. Williams, 21 L. R. A. 454.

A trustee need not be named if pointed out. 2 Pom. Eq. Jur. Sec. 1002, 2009, 1013; Masterson v. Townshend, supra.

The trustee designated in a will or a beneficiary can enforce it. Chambers v. Baptist Educational Society, 40 Ky. 215; Strong v. Doty, 32 Wis. 381; People v. Cogswell, 45 Pac. 270; Baptist Church v. Presbyterian Church, 57 Ky. 635; Attorney General v. Soule, 28 Mich. 153; Tryee v. Bingham, 100 Mo. 451; Trustees Emory & Henry College v. Shoemaker College, 92 Va. 320, 23 S. W. 765; Vidal v. Girard, 11 L. Ed. 205; Grimes v. Harmon, 35 Ind. 198; Tunstall v. Wormley, 54 Tex. 476; Girard v. Philadelphia, 19 L. Ed. 53; Sickles v. New Orleans, 26 C. C. A. 204, 214; Rev. Codes, 1905, 4892.

Action by Halvor J. Hagen against Severin Sacrison, in-

volving the construction of item 6 of the last will and testament of one John Sacrison, deceased. By this appeal the conclusions of law of the district court are alone challenged; there being no dispute as to the facts. The findings of fact of that court, so far as here material, together with its conclusions of law, are as follows:

"(1) That John Sacrison died on or about the 25th day of November, 1905, in Richland county, N. D., and was, at the time of his death, a resident of said Richland county. That he left a last will and testament, which was, with the petition mentioned in finding of fact No. 2, presented to and filed in the county court of Richland county and is a record therein. That at the time of his death said testator owned estate, both real and personal, within the state of North Dakota, and in the said county of Richland. That in said will the petitioner, Halvor J. Hagen, was named as sole executor. That said testator left no wife and only one child, to wit, the respondent, Severin Sacrison, his son.

"(2) On December 1, 1905, the petitioner, Halvor J. Hagen, duly presented and filed in the county court of Richland county a petition for the probate of the will of said John Sacrison, deceased, which will (omitting the first four items thereof which provide for the payment of his debts and funeral expenses and a liberal allowance to his only son and sole heir, Severin Sacrison) is as follows:

"'Item 5. I nominate and appoint my friend and business adviser of many years standing, Halvor J. Hagen, * * * sole executor of this will, granting unto him full power to do any and all lawful acts herein enjoined upon or recommended to him, and especially to make any and all conveyances of lands or transfers of property which may be necessary or advisable to enable him to fully and effectually carry out the intent of this will, and particularly the provisions which are to follow. That there may be no misunderstanding or misinterpretation of the provisions which follow and of the confidence reposed by me in my said executor, I desire to state that my said executor has, for many years, been and now is, my chosen business adviser and manager who has had a very large share in the care and management of my property and interests and to whose business judgment I am greatly indebted; and as I have confided in him fully during my lifetime and have found my confidence well founded and merited I have

no hesitation whatever about reposing like confidence in his integrity and ability with reference to my property after my death. * * *

" 'Item 6. Having provided my son and only heir a competency herein; having all my life long lived frugally and labored hard in the acquirement of my property, and feeling certain that the mantle of true charity covereth a multitude of shortcomings, it is my will and earnest desire that the remainder of my estate hereinafter specifically described shall be devoted to a worthy charity as hereinafter specified. To that end, therefore, I will and direct that all my remaining lands [describing the same] shall be, by my executor, sold at such time or times after my death as in his best judgment will bring the most money into his hands, but in any event not later than five years after my death, unless such period be extended by order of the county court of said Richland county, and the fund arising from such sale of lands, together with its earnings, if any, during said time, shall by my said executor be devoted to charity as nearly as may be in the following manner, to-wit: I desire that there shall be founded, established and maintained in my native county or district known as Taskog Sogn Darsland, in the Kingdom of Sweden, a children's home for the reception, care, nurture, succor and support of the destitute children of that vicinity, and that such children's home, when so established, shall be under the charge and custody of the proper officers of such district of Sogn, having the proper supervision of the poor, but whose official designation is not known to me at this time, the selection of such officers being left to my executor to be selected and designated in accordance with the laws of the Kingdom of Sweden. That this object may be accomplished I will and direct that my said executor shall use such part or portion of the funds arising as aforesaid as he may deem reasonably necessary for the establishment of such children's home and that the remainder of such fund shall be by him turned over to the proper officers aforesaid to be by them safely invested in accordance with the laws of the Kingdom of Sweden, the interest and income therefrom to be used by such officers for the support and maintenance of such children's home. It is my desire that my executor arrange with the proper authorities of said Taskog Sogn that in the establishment of said children's home said Taskog Sogn shall contribute a sum of money equal to one-half the neces-

sary cost of such establishment; that my said executor contribute from said fund the other half of such cost and that if possible my said executor arrange with such authorities that for the maintenance of such children's home they will provide a permanent fund or income sufficient to properly maintain the same with the income from the balance of the fund hereby created and to be devoted to such purpose. It is also my desire that my said executor so arrange with such authorities and officers that their services in and about the control and management of such children's home shall forever be free of charge as far as the fund hereby created may be concerned. I desire that in case any of the matters of detail herein set forth cannot either by reason of lack of legal authority or because of conflict with any law, or for any cause, be carried out as herein expressed, it shall be understood that my directions herein are merely recommendations and that the same shall not stand in the way of the accomplishment of the main object of this bequest, to-wit, the amelioration of the condition of the poor children of Taskog Sogn aforesaid. Inasmuch as it is impossible for me to even generally direct the carrying out of the intent of this bequest, it is necessary that a great latitude be left to my executor in the accomplishments of my main object; and having full confidence in him, both as to his ability and integrity, I willingly leave every matter of judgment and discretion entirely to him, and in all matters pertaining to this bequest I grant to him the fullest powers conformable to law the same as if such matters were specifically mentioned and he thereunder especially empowered.

"'Item 7. In case of the failure of the bequest herein made to my son Severin, by reason of his death, without issue, prior to my death, then the property devised to him, both real and personal, shall be also included in the bequest made in item 6 herein, and be administered according to such bequest.

"'Dated this 9th day of October, 1905.

"'John Sacrison.'

"(Duly attested.)

"After due notice according to law, and upon a hearing duly held in said county court on January 9, 1906, * * * an order and decree of the county court was duly made and entered, establishing said will as the last will and testament of said John Sacrison, admitting the same to probate, and appointing the peti-

tioner, Halvor J. Hagen, sole executor of said will. That thereupon letters testamentary were duly issued out of said county court to the said Halvor J. Hagen as executor of said will, and the said executor thereupon qualified and entered upon the discharge of his duties as such executor, and has not been suspended or removed, but is in full execution of his said trust.

"(3) That within the statutory period after the entry of said decree, * * * the respondent, Severin Sacrison, appealed to this court from the whole of said decree. That thereafter said appeal from said decree was dismissed by this court upon the stipulation of the parties thereto, and judgment of dismissal was entered in this court, and the record on said appeal was thereupon returned to the county court of said Richland county. Thereafter, and on May 12, 1906, the parties entered into and filed in the county court a stipulation in the following words: 'It is stipulated and agreed by and between the parties to the above-entitled cause: That, whereas, a motion has been made in the above-entitled court for an order vacating and setting aside the decree heretofore entered herein on January 9, 1906, admitting to probate a document purporting to be the last will and testament of one John Sacrison, deceased; and, whereas, it is the desire of all parties interested in the estate of said John Sacrison, deceased, both as heirs at law and beneficiaries of said will, that a judicial construction shall be had determining the sufficiency, validity, legal effect, and binding force of the provisions contained in paragraphs numbered items 6 and 7 of said will; and, whereas, the proceeding by said motion and upon petition as provided by law to vacate said decree and order and to test the validity of said portion of said will would involve a large expense: Now, therefore, it is stipulated that the portion of said last will and testament in paragraphs numbered items 6 and 7 shall be submitted to said county court for construction as to the sufficiency, validity, legal effect, and binding force thereof, and that such submission shall be made at a time agreed upon between the parties, or upon five days' notice by either party, or at a time to be fixed by order of said court, and that either party interested may take such testimony as may be necessary with reference to the issues so to be submitted, and that such submission shall have the same force and effect as if the same had been done upon the offering of said will for probate, and that all objections on the part of the petitioner

in the proceeding for the probate of said will and on the part
of the executor of said will to such submission and construction
by the court which go to the fact that such submission and con-
struction are made after the entry of the decree and order ad-
mitting said will to probate, be, and the same are hereby, ex-
pressly waived, and if it be found, as matter of law, that such sub-
mission and construction cannot be had without opening and
vacating the decree of said court in so far as the same refers and
relates to said items 6 and 7 of said will, then the same shall be
deemed vacated and opened to that extent and to that extent
only.'

"(4)   It was stipulated between the parties, and I find it to
be a fact, that Torrskog socken, in Darsland, in the Kingdom of
Sweden, was the birthplace of the testator, John Sacrison, and
that he was a native thereof.

"(5)   That under the Constitution and laws of the Kingdom of
Sweden a socken is a territorial municipality of the Kingdom of
Sweden, and that Torrskog socken aforesaid is such a territorial
municipality of said Kingdom of Sweden, corresponding on a
small scale to a county in the state of North Dakota, and that all
sockens of the Kingdom of Sweden, including Torrskog socken,
have constantly in office competent persons whose official duty it
is to have supervision, charge, custody and control of the poor of
such sockens and of the poor funds of such sockens; such officers
being commonly known and designated as 'poor wardens,' or 'war-
dens of the poor.'   That in the municipality of Torrskog socken
the municipal officers, who are known and designated as the 'kom-
munalmand' of such wardens of the poor, have supervision, charge,
custody, and control of the poor of such sockens, and the poor
funds thereof.   That there were at the time of making said will
and at the date of the death of said testator, and are at this time,
such poor wardens in office in Torrskog socken aforesaid.

"(6)   That under the Constitution and laws of the Kingdom of
Sweden the municipality of Torrskog socken has legal power and
authority to take, receive and administer personal property upon
trust to the use, benefit and behoof of the poor children within said
socken.   That there were at the date of said will and at the date
of the death of said testator, and that there are now,  in  said
Torrskog socken, poor and destitute children.

"(7)   That the word 'Taskog,' as used in the testator's will,

is commonly pronounced by Swedes and those familiar with the Swedish language, 'Tawskog.' That the word 'Sogn' as used by the testator in said will, is the Norwegian form of the word 'socken,' and is ordinarily by Norwegians and those familiar with the Norwegian language, pronounced 'soggon.' That the name 'Dalsland,' in the spoken language of the common people of Sweden and Norway and persons familiar with the language spoken by such common people, is commonly pronounced 'Darsland.'

"(8)   That there is no place, community or municipality in the Kingdom of Sweden known officially by the title 'Taskog Sogn Darsland.'

"(9)   That under the laws of the Kingdom of Sweden a citizen · of that kingdom who has a wife or child living at the time of his death can only devise by will to charity an amount equal to one-half of the estate of which he died seized. That the fund devised by the testator in this case under item 6 of said will is of a greater value than the one-half of the estate of which he died seized.

"(10)   That the respondent, Gunhild Gunderson, who has not appealed from the decree of said county court herein, neither has nor claims any rights or benefits under the will of the testator at this time.

"From the foregoing findings of fact, the court now makes and files the following conclusions of law:

"(1)   That by the making of the will and the death of the testator, John Sacrison, the lands mentioned in item 6 of said will became in equity converted into money, and that therefore the bequest mentioned in said item 6 of said will is a bequest of personal property and to be administered as such.

"(2)   That the power of alienation of said lands is not by said will suspended for any period whatever.

"(3)   That the beneficiaries of the charity sought to be established by said will are definite and certain, to-wit, the poor and destitute children of Torrskog socken in the Kingdom of Sweden, for whose support, care and maintenance, the municipality of Torrskog socken aforesaid may · be legally liable and chargeable under the laws of the Kingdom of Sweden.

"(4)   That the title to the funds arising and to arise from the sale of the lands mentioned in item 6 of said will in accordance with the terms thereof vests as matter of law in the municipality

of Torrskog socken in the Kingdom of Sweden, subject, however, to the trust created by said will, to-wit, that the income thereof shall be devoted by said municipality, through its proper officers, to the providing of a home, care, nurture, succor and support of the destitute children of said municipality.

"(5)   I find as matter of law that the recommendation of the testator contained in said item 6 of said will with reference to the establishment of the children's home as provided in said will, is reasonably capable of being carried out and fulfilled in accordance with the true meaning and intent of said will without the executor of said will being necessarily compelled to invest any portion of said fund in the real estate in the said Kingdom of Sweden; and, further, that whether the said municipality of Torrskog socken shall or shall not see fit to comply with the recommendation of the testator with reference to the matters recommended to be done by said municipality has no effect on the validity of the bequest contained in said item 6, because, as matter of law, the conditions of said bequest, according to the true intent and meaning thereof, will be fulfilled without any such compliance on the part of said municipality by the payment over by the executor of said will of the said fund to the proper officers of said Torrskog socken, authorized under the Kingdom of Sweden to receive the same on behalf of said socken in trust as provided in said will, that the same be invested by said socken, acting through its proper officers, and the income arising therefrom be devoted solely to the purpose of the trust mentioned in said item 6 of said will.

"(7)   I find further as matter of law that the bequest set forth in said item 6 of said will is a valid bequest for the founding of a perpetual charity, which bequest, is in all things capable of enforcement in accordance with the true intent and meaning of said will and in conformity with the laws of the state of North Dakota and the laws of the Kingdom of Sweden.

"(7½)   Not more than one-half of the total value of the testator's estate can be distributed under the provisions of item 6 of said will, and in case the funds in the hands of said executor, when ready for distribution, amount to more than one-half of such total value of such estate, then the excess over and above such one-half of such total value will not pass by said item 6 of said will, but will be and remain a part of the general estate of the decedent to descend according to the laws of this state.

"(8) That the petitioner is entitled to a judgment and decree of this court affirming in all things the judgment of the county court of Richland county, entered herein upon the 22d day of September, 1906, establishing said will of John Sacrison as the last will and testament of said John Sacrison and as valid and enforceable in all its parts.

"Let judgment be entered accordingly.

"Dated at Lisbon, the 2d day of December, 1907.

"By the court: Frank P. Allen,

"Judge of the District Court."

Thereafter, and on January 17, 1908, the appellant caused a judgment to be entered by the clerk pursuant to the findings, conclusions, and order above mentioned; the petitioner, Halvor J. Hagen, having refused to enter any formal judgment herein, his counsel taking the position that such formal judgment was neither necessary nor permissible. It is from such judgment, and not from the order of date December 2, 1907, that this appeal was taken. Respondent made a motion in this court to dismiss such appeal; the basis of his motion being that there is no warrant in law for the entry of such judment, and that the same is void upon its face, and his position being that the appellate jurisdiction of the district court, as defined by statute, does not confer on that court power to enter a formal judgment and that the findings and conclusions constitute the decision of that tribunal from which an appeal must be taken, if taken at all.

FISK, J. (after stating the facts as above.) The motion for a dismissal of the appeal should, we think, be denied; but, in view of our decision upon the merits, we deem it useless to state our reasons for denying such motion or to further notice the same.

The assignments of error are nine in number; but they all relate to the correctness of the conclusions of law numbered 1, 2, 3, 4, 5 and 7, and such conclusions merely involve the question of the validity of item 6 of such will. Generally speaking, the facts in this case call for the application of certain well-recognized rules of construction and interpretation of charitable trusts, as follows: "Charitable trusts are highly favored, and a liberal construction will be adopted in order to render them effectual." 5 Am. & Eng. Enc. Law, 897, and cases cited. See, also: Duggan v. Duggan, 63 U. S. App. 149, 92 Fed. 806, 34 C. C. A. 676; In re Upham's Estate, 127 Cal. 90, 59 Pac. 315; In re Willey's Will, 128 Cal.

1, 60 Pac. 471; Fay v. Howe, 136 Cal. 599, 69 Pac. 423; Strong's Appeal, 68 Conn. 527, 37 Atl. 395; Ingraham v. Ingraham, 169 Ill. 432, 48 N. E. 561, 49 N. E. 320; St. James Orphan Asylum v. Shelby, 60 Neb. 796, 84 N. W. 273, 83 Am. St. Rep. 553; In re John's Will, 30 Or. 494, 47 Pac. 341, 50 Pac. 226, 36 L. R. A. 242; Harrington v. Pier 105 Wis. 485, 82 N. W. 345, 50 L. R. A. 307, 76 Am. St. Rep. 924; 7 Cur. Law, 629. Such trusts are not within the rule against perpetuities, nor are they affected by or within the scope of statutory or constitutional provisions against perpetuities in general. 5 Am. & Eng. Enc. Law, 902. See, also, recent cases cited in 1 Supp. to Am. & Eng. Enc. Law, page 955. Such trusts are distinguished from an ordinary trust by the uncertainty of their beneficiaries. Such uncertainty does not cause a charitable trust to fail. In addition to the authorities above cited, see: Grant v. Saunders, 121 Iowa, 80, 95 N. W. 411, 100 Am. St. Rep. 310; Gidley v. Lovenberg, 35 Tex. Civ. App. 203, 79 S. W. 831. The names of the beneficiaries need not be mentioned in the will creating the trust. If the language used indicates with reasonable certainty the objects of the testator's bounty, it is sufficient. Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104; 5 Am. & Eng. Enc. Law, 917. Charitable trusts do not fail for want of trustees. The legal estate, in such a case, is regarded in abeyance, or as vested in the heirs or executors of the donor for the use of the beneficiaries, or the court will appoint a trustee to carry out the charitable purposes of the testator. 5 Am. & Eng. Enc. Law, 920, and volume 1, Supplement thereto, 959, and cases cited. See generally upon the subject of charitable trusts the exhaustive note in 14 L. R. A. (N. S.) 49-155.

It is appellant's contention in the case at bar: That the charitable trust sought to be established is void because it suspends the power of alienation of the property therein described for a period prohibited by the laws of this state; that it is too indefinite and uncertain; that there is no trustee named in the will to take and hold the property and administer the trust; that item 6 of the will is too indefinite and uncertain as to the ultimate beneficiaries; and that there is no method pointed out by which such beneficiaries can be definitely ascertained. If the trust attempted to be established is valid and enforceable, it is conceded that the directions to the executor to sell the real property operated to effect an equitable conversion of such land into money. That such equitable

conversion of the real estate into personalty would be effected as of the date of the testator's death is well established. Penfield v. Tower, 1 N. D. 216, 46 N. W. 413, and cases cited.

But it is contended by appellant's counsel that item 6 of the will is void because, as claimed, it suspends the power of alienation of the property therein described for a period which is prohibited by the laws of this state, and we are referred by counsel in support of their contention, to sections 4744 and 4745, Rev. Codes 1905. By these sections the absolute power of alienation cannot be suspended for a longer period than during the continuance of the lives of persons in being, with a certain exception not here material. If counsel's premise be true, their conclusion, no doubt, would be sound; but, as we construe item 6 of the will, the power of alienation of the lands described therein is not suspended at all; nor was such result contemplated by the testator. The executor is vested with an absolute and unconditional power to sell and convert the real estate into money and to devote such fund to the charitable use therein mentioned. When thus applied in accordance with the instructions of the testator, the rules of law against perpetuities have no application. In addition to the foregoing authorities, see In re John's Estate, 30 Or. 494, 47 Pac. 341, 50 Pac. 226, 36 L. R. A. 242, and Ould v. Hospital Co., 95 U. S. 303, 24 L. Ed. 450. Appellant bases his contention that the rule against perpetuities is violated upon the ground that the limit of time in which the executor may sell and convert the lands into money is fixed at five years, but that such period may be indefinitely extended by order of the county court. Counsel are clearly in error in such contention. The above language of the will in no manner suspends the power of alienation. Such power of alienation was not suspended for an instant, as the executor had the right to exercise such power immediately after the death of the testator. As stated in 22 Am. & Eng. Enc. Law, 720: "The statute applies to power of alienation and not to its exercise. * * * The statute is directed against the suspension of the power of alienation, and does not concern itself with the actual exercise of the power. Hence a direction in a will giving the executor discretion as to when he shall sell the land and distribute the proceeds is valid, since the power of alienation is not suspended, though it may not be exercised during the period; and the fact that the testator limited the time within which the sale should take place,

òr desired the postponement of the sale for a certain time, or suggested a time when it should be made, will not work a suspension of the power if the direction is advisory and does not create a trust for a time certain"—citing Robert v. Corning, 89 N. Y. 226; Fitzgerald v. Big Rapids, 123 Mich. 281, 82 N. W. 56; Hope v. Brewer, 136 N. Y. 126, 32 N. E. 558, 18 L. R. A. 458; Atwater v. Russell, 49 Minn. 59, 51 N. W. 629, 52 N. W. 26; Deegan v. Wade, 144 N. Y. 573, 39 N. E. 692; Chanler v. New York, etc., Co., 34 App. Div. 305, 54 N. Y. Supp. 341; Deegan v. Von Glahn, 75 Hun. 39, 26 N. Y. Supp. 989; Kirk v. Kirk (Sup.) 12 N. Y. Supp. 326; Rausch v. Rausch (Sup.) 31 N. Y. Supp. 786.

In Robert v. Corning, supra, Andrews C. J., among other things, said: "But the mere creation of a trust does not, ipso facto, suspend the power of alienation. It is only suspended by such a trust, where a trust term is created, either expressly or by implication, during the existence of which a sale by the trustee would be in contravention of the trust. Where the trustee is empowered to sell the land, without restriction as to time, the power of alienation is not suspended, although the alienation in fact may be postponed by the nonaction of the trustee, or in consequence of a discretion reposed in him by the creator of the trust. The statute of perpetuities is pointed only to the suspension of the power of alienation, and not at all to the time of its actual exercise. * * *" In that case it was strenuously insisted by respondent's counsel that the testator intended the will to vest the legal title to his real estate in the executors, and that this is the legal effect of the power of sale. The court does not determine the correctness of such contention; the court saying: "But it is unnecessary to determine whether the executors took, under the will in question, the legal title to the real estate, for, in the view we take of the will, there was no suspension of the power of alienation, whether the executors took a trust estate, or were simply donees of a trust power. In either character, whether as trustees or as executors only, they could at any time, from the moment of the testator's death, have conveyed an absolute fee in possession. The suspension of the power of alienation of the real estate is supposed to result from the direction of the fourth section of the will, that the sale of the testator's real estate, situate in the state of New York, should be made by the executor at public sale in the city of New York after three weeks' notice by publication in four daily newspapers of

the city, and also from the provision in the eighth section that, 'in view of the present great depression in real estate,' the executors might exercise a discretion as to the time of sale not longer than three years after the testator's death. * * * The statute of perpetuities is not violated by directions which might involve some delay in the actual conversion or division of property, arising from the necessity of giving notice, or doing other preliminary acts. Such delays are not within the reason or policy of the statute. The statute was aimed against the creation of inalienable trust estates or contingent limitations, postponing the vesting of titles beyond the prescribed period. * * * We are also of the opinion that the discretion vested in the executors to delay the sale of the real estate not exceeding three years did not create a trust term for any period of time and involved no suspension of the power of alienation. * * * The power of sale was not fettered by the discretion given by the will. The executors could sell and convey the land at any time by a perfect title."

By the power of sale the executor was expressly empowered to sell and convey such legal title for the purpose of carrying out the trust which he was required to do within five years after the testator's death. By operation of the will, at the death of the testator the property at once became dedicated to a perpetual charity. Such gift to charity took effect in præsenti, and, as stated in Re John's Estate, supra: "The only thing which is postponed or made dependent for its execution upon future and uncertain events is the particular form or mode which the donor would have applied to the execution of the charity." As stated elsewhere in said opinion: "The property is taken out of commerce and goes instantly into perpetual servitude to charity. While the form of charity may vary, and a succeeding form become effective, contrary to the rule, the primary object, that of charity, continues and is allowable, through the law's regard for charitable uses, and in consideration of the beneficial result flowing therefrom. Storrs Agricultural School v. Whitney, 54 Conn. 342, 8 Atl. 141. * * * A gift may be made in trust for a charity not in esse, but to come into being at a time uncertain in the future, or which is to take effect upon some contingency that may possibly not happen within a life or lives in being and 21 years and 9 months afterwards, and which does not contravene the rule, provided there is no gift, in the meanwhile,

to or for the benefit of any private corporation or person. The doctrine finds support upon the ground that the intention in favor of charity is absolute; the gift and the constitution of the trust is immediate—takes effect in præsenti. * * *"

Appellant's contention that, conceding there is a trustee in whom the title rests in trust, still the rule against perpetuities obtains because the duration of such trust is not limited and might exceed the legal limit of time, and the title could not be alienated by the trustee except pursuant to the terms of such trust, is without merit. As before stated, the power of alienation is not suspended for an instant, and it is immaterial whether it be held that the title to the real estate descended to the heir by operation of law for the want of a testamentary trustee, or whether it was left by the will to a trustee. In any event, and by whomsoever held, the title is thus held in trust for this charitable purpose, and the executor is clothed with the undoubted power to at once sell and convey such title for the purpose of carrying into effect such charitable gift. The contention of appellant is, we think, fully answered by the Court of Appeals of New York in Hope v. Brewer, 136 N. Y. 126, 32 N. E. 558, 18 L. R. A. 458, and cases cited; also, by the Minnesota court in Atwater v. Russell, 49 Minn. 57, 51 N. W. 629, 52 N. W. 26 and Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104.

Item 6 of the will contains, among other things, the following provisions: "It is my desire that my executor arrange with the proper authorities of said Taskog Sogn that, in the establishment of said children's home said Taskog Sogn shall contribute a sum of money equal to one-half the necessary cost of such establishment and that my executor contribute from said fund the other half of such cost, and that, if possible, my said executor arrange with such authorities that, for the maintenance of such children's home they will provide a permanent fund or income, sufficient to properly maintain the same, with the income from the balance of the fund hereby created and to be devoted to such purpose. It is also my desire that my said executor so arrange with such authorities and officers that their services in and about the control and management of such children's home shall forever be free of charge, as far as the fund hereby created may be concerned." It is urged by appellant's counsel that the foregoing provisions are conditions precedent, and, being uncertain of fulfillment, the attempted

gift to charity must fail, as the time when the title would vest in the beneficiaries is left indefinite and uncertain. Such contention is devoid of merit. The provisions above quoted are not conditions precedent, but are mere recommendations or expressions of a desire on the part of the testator. The language of the will clearly shows this to be true, as the following sentence demonstrates: "I desire that, in case any of the matters of detail herein set forth cannot * * * be carried out as herein expressed, it shall be understood that my directions herein are merely recommendations and that the same shall not stand in the way of the accomplishment of the main object of this bequest, to-wit, the amelioration of the condition of the poor children in Taskog Sogn aforesaid." Such provisions being merely recommendations, the validity of the bequest is not dependent upon whether or not the officers of the municipality of Torrskog socken may be compelled or permitted to administer the trust, or whether, if they do so, it shall be done in their official capacities, or under the jurisdiction and supervision of the proper court. Skinner v. Harrison Township, 116 Ind. 139, 18 N. E. 529, 2 L. R. A. 137.

It is next contended that item 6 of the will is too vague, indefinite and uncertain to be legally enforceable; the particular grounds of objection being: First, that the testator has left to the executor too wide a latitude in carrying out the charitable bequest; and, second, that the provisions wherein the executor is requested to arrange with the authorities of Torrskog socken for the contribution by the socken of one-half the cost of establishing the child's home, and directing him, if possible, to arrange with such authorities for the maintenance of the home, is too uncertain of accomplishment. It is a noticeable fact that counsel fail to cite any authority in support of the first ground mentioned, and we believe none exists. On the contrary, ample authority exists in support of the right of the testator to vest in his executor the widest possible latitude to exercise his own best judgment in carrying out such a bequest, and we entertain no doubt that the will is valid in so far as this feature of the same is concerned. In many of the cases above cited, the executor or trustees were vested with a discretion fully as broad, if not broader, than was done by the testator in the case at bar. In addition to the foregoing authorities, see: Haynes v. Carr, 70 N. H. 463, 49 Atl. 638; Power v. Cassidy, 79 N. Y. 602, 35 Am. Rep. 550; In re Dulles, 218 Pa. 162,

67 Atl. 49, 12 L. R. A. (N. S.) 1177, and numerous cases cited in note. In the latter case, among other things, it was said: "The fundamental law of Pennsylvania in regard to property, which ought not to require restatement as often as it does, is that the owner may do as he pleases with it, provided the disposition be not to unlawful purposes; and what he may do himself he may do by agent while living, or by executor after death. This principle disposes of this case. Miss Dulles, living, could have taken her securities out of her strong box, and handed them to the appellants with directions, even verbal, to distribute them, in their discretion, among religious, charitable and benevolent objects or institutions. That disposition would have been valid and unassailable. There is no good reason why Miss Dulles, dead, could not make the same disposition of her property by testament. * * * The discretion which was hers to exercise, she chose to delegate to her executors. It was her right to do so, and, so long as their discretion is not legally abused, its exercise is as valid as if it was expressly her own."

Regarding the second ground of objection, the same has, we think, been sufficiently disposed of by what we have heretofore said, to the effect that the provisions which it is claimed render item 6 uncertain are not conditions precedent at all, but are merely recommendations of the testator; and, furthermore, it appears that the municipality known as Torrskog socken is ready and willing to accept and carry out the terms of the trust; and, in any event, as held by the Indiana court in Skinner v. Harrison Township, supra, these are questions which do not affect the validity of the bequest. See, also, Kurzman v. Lowy, 23 Misc. Rep. 380, 52 N. Y. Supp. 83.

It is next contended that no trustee is designated in the will who is to hold the fund in trust; that from the will itself no one can tell in whom the title to the property is to rest. It is, of course, true that the title to this fund must rest some place. It is equally true that the will fails to expressly designate a trustee by name to hold such fund and to administer the trust; but it by no means follows from this that such trust must necessarily fail, if by the most liberal construction of the language of the will, aided by extrinsic evidence for the purposes of identification, it can be determined that the testator intended that a certain entity, competent to take and administer the trust, should thus act. Such

rule of construction should be invoked in the light of the well-recognized presumption in favor of the validity of such bequests, and the fundamental maxim: "That is certain, which is capable of being made certain." Also: "A will is to be construed according to the intention of the testator. When his intention cannot have effect to its fullest extent, it must have effect as far as possible." Rev. Codes, section 5140.

The testator clearly intended that the fund arising from the sale of these lands should be devoted to a worthy and perpetual charity, to-wit, "the amelioration of the condition of the poor children in Torrskog socken aforesaid." In order to give effect to such intention, there must be a trustee capable of taking and administering a trust of this character. As the bequest is one creating a perpetual charity, no individual could act as such trustee. Is it possible, ·from the provisions of the will, aided by extrinsic evidence as to identification, to determine with reasonable certainty whom the testator intended to designate as such trustee? If so, whom did he intend should take title to this fund and administer such perpetual charity? From the record in this case the answers to these questions are not difficult. By item 6 of the will the testator directs that such children's home, when established, "shall be under the charge and custody of the proper officers of such district or sogn having the proper supervision of the poor, but whose official designation is not known to me at this time, the selection of such officers being left to my executor to be selected and designated in accordance with the laws of the Kingdom of Sweden." This language furnishes unmistakable proof that the testator intended to vest title to such fund in such officers and their successors in office as have under the laws of Sweden, supervision of the poor in such socken, in trust for the purpose aforesaid. The fact that the testator could not designate them by their proper official title is not at all material, as they were designated with sufficient particularity to enable the executor, or any one else, by the aid of extrinsic facts, to determine to an absolute certainty the trustees intended. Whether, as intimated by respondent's counsel, the effect of designating such officials, and by necessary implication their successors in office, necessarily operated as a designation of the municipality of Torrskog socken as such trustee, we need not determine; nor is it material, for appellant's contention that no trustee was sufficiently designated is fully answered by

holding that either such officers and their successors in office, or such municipality, were designated and are capable of acting. "Where a charitable bequest is made to a trustee in a foreign country, the court will not assume that, should the trustee refuse to act, a foreign court will permit the trust to fail, but will assume that it will appoint a trustee." Kurzman v. Lowy, 23 Misc. Rep. 380, 52 N. Y. Supp. 83. See, generally, upon the question of certainty as to trustees, the many authorities cited in the exhaustive note in 14 L. R. A. (N. S.) 104-116. See, also, the very recent case of Grant v. Saunders, 121 Iowa, 80, 95 N. W. 411, 100 Am. St. Rep. 310, involving a charitable bequest in which many of the questions involved in the case at bar, including the question here under consideration, were disposed of adversely to appellant's contention. In that case the testator designated one Barber R. Fouche as trustee to administer such perpetual charity without providing a successor to such trustee at her death. The court said: "The contention that the trust must fail because the court cannot appoint trustees to act in the place of the one named in the will is not sound, in our judgment. Such a contingency has not yet arisen, nor may it ever arise; and why should we anticipate imaginary difficulties for the purpose of defeating that sweet charity, which 'in thought, speech and deed challenges the admiration and affection of mankind.' Christianity teaches it as its crowning grace and glory. Chief Justice Ryan in Dodge v. Williams, 46 Wis. 91, 1 N. W. 92, 50 N. W. 1104. The will provides that the entire fund shall be used as directed, without limit as to time, and we may presume that it will be so expended during the life of the present trustee. Quinn v. Shields, supra. Moreover, the general rule is that a trust shall never fail for the want of a trustee. 1 Perry, section 38; Seda v. Huble, 75 Iowa, 429, 39 N. W. 685, 9 Am. St. Rep. 495. And if it should ever become necessary for the court to appoint another trustee, we see no insurmountable obstacle in the way of its so doing. True, whatever remained of the fund would necessarily have to be distributed as the judgment of the appointed trustee might dictate; but the worthy poor 'we have always with us,' and they, as a class, were the objects of the testator's charity. The selection of the individuals from among their number must necessarily be left to the judgment of some one. To Miss Fouche is given the right to first execute the charitable purpose, and, although the testator does not expressly

provide for the appointment of others by whom the objects shall be selected and the fund distributed when she shall decease, or for any other reason be incapable of acting, it cannot be that he intended his gift to fail. He created it for a specific charitable purpose, and he might well suppose, if his attention were called to the matter, that proper means of executing his purpose could be provided through the medium of the courts, if in any matter of detail his provision therefor was insufficient."

Another very recent case is that of Kemmerer v. Kemmerer, 233 Ill. 327, 84 N. E. 256, 122 Am. St. Rep. 169. In that case no trustee was designated; but the testator's widow was named as executrix, "with full power to execute" the will, and duties were imposed upon her by the will which belong only to a trustee, and it was held that the trust does not fail for want of a trustee, since the widow, though named only as executrix, may carry into effect the provisions of the trust, and if she fails to act a court of equity will appoint a trustee. The court said: "In creating a trust the testator need not employ the words 'trust' or 'trustee.' If he has named a person in his will, and has directed him to carry out all or a portion of the provisions which have been made for the benefit of others therein, the person thus named will be held to be a trustee, and, if he cannot carry out the provisions of the will except the legal title to the property to be held to be in him as trustee, then he will be held, by implication, to hold the legal title to the property which he is directed to convey. 2 Underhill on Wills, section 781; 1 Perry on Trusts, section 262; 2 Pomeroy's Eq. Jur. (2d Ed.) section 1011; Hale v. Hale, 125 Ill. 399, 17 N. E. 470; Olcott v. Tope, 213 Ill. 124, 72 N. E. 751."

Such also seems to be the statutory rule in this state. Section 5750, Revised Codes 1905, provides: "When a trust exists without any appointed trustee, or when all the trustees announced die or are discharged, the district court of the county or judicial subdivision where the trust property, or some portion thereof, is situated, must appoint another trustee and direct the execution of the trust. * * *"

But appellant's counsel ask: "In whom does the title to the property in question now vest?" Under the doctrine announced by the Supreme Court of Illinois in Kemmerer v. Kemmerer, supra, it vests in the executor as trustee; but whether such is the fact or whether it vests in the heir by operation of law for want of the

designation of a trustee thereof in the will, we are not required to determine. It certainly vests in the one or the other. If in the latter, it is not by virtue of the will, but by operation of law on account of the failure of the testator to designate by will such trustee, and the heir may be required, if necessary, to execute the trust. In any event, the will confers upon the executor a power in trust to sell and convert such real property into money, and such power may be executed without any act on the part of the heir, even though he be held to be, by operation of law, the holder in trust of the legal title to these lands. This sufficiently disposes of appellant's fourth contention.

It is next contended that the will is void for uncertainties in the beneficiaries. In this we are also unable to agree with appellant's counsel. Much of appellant's argument on this phase of the case is predicated upon an erroneous construction of the language of the will. We quote from counsel's brief: "Under the terms of the will it is the testator's intention that the property involved is to be used for the care, nurture, succor, and support of the destitute children of the vicinity of Torrskog socken, and therefore it was not contemplated by the testator that the beneficiaries of the will should be confined exclusively to that socken, but rather those residing in that socken and the vicinity thereof." We do not thus construe the will. When item 6 is considered as a whole, the intention of the testator is manifest to restrict such charity to the poor and destitute children in Torrskog socken. The words "of that vicinity" must be held to relate to the territory included within such socken. Such construction is made necessary by the subsequent language in item 6, wherein the testator directs that such children's home "shall be under the charge and custody of the proper officers of such district or Sogn having the proper supervision of the poor. * * *"; by his expression of a desire that the executor arrange with such authorities to contribute one-half the cost of establishing such home, and, if possible, arrange with such authorities to provide a permanent fund or income sufficient to properly maintain the same. But what places such construction beyond the realm of debate is the language in the latter portion of the item, wherein the testator declares that the main object of the bequest is "the amelioration of the condition of the poor children in Taskog Sogn aforesaid." But, even under the construction contended for by appellant's counsel, authorities are

numerous sustaining bequests of this character as against similar assaults. See: Kemmerer v. Kemmerer, 233 Ill. 327, 84 N. E. 256, 122 Am. St. Rep. 169; St. James Orphan Asylum, et al. v. Shelby, 60 Neb. 796, 84 N. W. 273, 83 Am. St. Rep. 553; In re Nilson's Estate, 81 Neb. 809, 116 N. W. 971; Hope v. Brewer, 136 N. Y. 126, 32 N. E. 558, 18 L. R. A. 458; Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104; Re John's Estate, 30 Or. 494, 47 Pac. 341, 50 Pac. 226, 36 L. R. A. 242; Thompson's Ex'r v. Brown, 116 Ky. 102, 75 S. W. 210, 62 L. R. A. 398, 105 Am. St. Rep. 194; Sherman v. Congregational Home Missionary Society, 176 Mass. 349, 57 N. E. 702.

But it is strenuously contended that the bequest is void for uncertainty because the testator has not designated with sufficient particularity the chidlren whom he intended as the objects of his bounty. The designation is "the destitute children," and, in another place, "the poor children in Taskog Sogn aforesaid." Whether the testator had in mind any particular class of the poor and destitute children in such socken we cannot determine. He designated a general class, which may or may not include the pauper poor, and he directed that such children's home, when thus established, shall be under the charge and custody of certain officials of the socken. We think it may be fairly implied therefrom, in the absence of anything to the contrary, that he intended to vest in such officials the incidental powers to select the individuals within the general class thus designated who are to partake of his bounty. In this we find ample support in the authorities, a few of which we cite: Hunt v. Fowler, 121 Ill. 269, 12 N. E. 331, 17 N. E. 491; Woodruff v. Marsh, 63 Conn. 125, 26 Atl. 846, 38 Am. St. Rep. 346. And see, generally, cases cited in note 14 L. R. A, (N. S.) 133-139.

In Woodruff v. Marsh, supra, the bequest was "for the purpose of maintaining and supporting a home for destitute and friendless children, permanently, * * * to be known as the William L. Gilbert Home; the same to be under the care and control of the above-named persons as trustees." It was contended that this bequest was void for indefiniteness, uncertainty, and the absence of any grant of power to select the beneficiaries. In overruling such contention, the court said: "In devises and bequests of this nature, our law requires either certainty in the particular persons to be benefited, or certainty as to the class of persons to be benefited,

with an ascertained mode of selecting them out of such class. The testator, in the present case, describes the persons whom he intends to benefit as 'destitute and friendless children;' the mode of benefit to be 'maintaining and supporting a home' for them, 'permanently,' at a place particularly specified, to be known as the 'William L. Gilbert Home,' the same to be under the care and control of the trustees whom he has selected, and their successors in the trust. * * * We think that the trustees who are to maintain and support this home, and under whose care and control it is expressly placed, are thereby invested with ample power to select for its inmates from time to time, subject only to the limitations imposed in the concluding portion of the will, such individuals of the class of destitute and friendless children as they, or a majority of them, may think proper, or to commit the power of selection to suitable officers or agents under their supervision. This power to admit includes power to exclude, and to remove after admission. All such acts are naturally incident to the control of the institution." The foregoing reasoning impresses us as sound, and is strikingly applicable to the case at bar, and furnishes a sufficient answer to appellant's contention.

In arriving at this conclusion, we are not unmindful of the express concession in respondent's brief to the effect that such bequest is not sufficiently definite as to the beneficiaries if the will is construed to apply solely to children other than those maintained at public expense. While there are authorities in support of the construction contended for by respondent's counsel, we are convinced that the adoption of such construction would operate to thwart, in some degree at least, the apparent intention of the testator. The length of this opinion forbids a review of the many cases cited by counsel upon this interesting question. Suffice it to say that an examination of them, and many others, has served to satisfy us that the rule above announced will more nearly effectuate the evident purpose sought to be accomplished by the testator, and this is and should be the constant aim in view by the court.

The lower court, by its conclusion of law numbered $7\frac{1}{2}$, held, in effect, that under the laws of Sweden but one-half of the estate can be devoted to such charity, and hence that, to the extent that the will attempts to leave more than this for such purpose, it cannot be carried out. In view of the language of such foreign

law, as disclosed by the findings, it is doubtful if such conclusion is correct. Such law purports to operate upon the testamentary powers of citizens of Sweden only; but, in any event, it is at least a debatable question whether the validity of such bequest, in so far as this feature thereof is concerned, should not be determined by the courts of Sweden, where the charity is, by the will, to be administered. But we do not understand that this question is before us, as the correctness of such conclusion is not challenged, by respondent, either by appeal or otherwise.

It follows that the portions of the judgment appealed from are correct, and the judgment must be, accordingly, affirmed. All concur.